Phillip M. CALI, Defendant, Appellant,

v.

UNITED STATES of America, Appellee.

No. 6309.

United States Court of Appeals First Circuit.

Dec. 8, 1964.

Daniel F. Featherston, Jr., Boston, Mass., with whom Choate, Hall & Stewart, Boston, Mass., was on brief, for appellant.

William J. Koen, Asst. U. S. Atty., with whom W. Arthur Garrity, Jr., U. S. Atty., was on brief, for appellee.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

WOODBURY, Chief Judge.

After a jury waived trial the appellant was found guilty and sentenced for receiving and possessing whiskey valued in excess of $100 knowing the same to have been stolen from an interstate shipment of freight in violation of Title 18 U.S.C. § 659. The only issue on this appeal is whether there was probable cause for the appellant's arrest which led up to the search that produced the evidence on which his conviction rests. A timely motion to suppress the evidence was made and denied by the District Court. The facts are not in dispute.

On Saturday, September 10, 1960, the Boston Office of the Federal Bureau of Investigation learned that there had been a theft of cartons containing quart bottles of Seagrams Seven Crown whiskey in Somerville, a suburb of Boston, from an interstate shipment by truck. Special Agents attached to the Boston office began an investigation. On the next day, Sunday, September 11, as the result of a telephone call, Special Agent Kehoe of the Federal Bureau of Investigation went to the police station in Winthrop, another Boston suburb, and was told by the Winthrop police that at about 6:00 P.M. that day they had received an anonymous telephone call from a man who reported that there were 200 cases of stolen liquor at 38 Franklin Street, Winthrop, that some of the liquor had been removed that day and that the rest of it was supposed to go out that night. Agent Kehoe with a detective and an officer of the Winthrop police, then drove in Kehoe's car to the area of 38 Franklin Street which proved to be a private dwelling house in a residential area. Another Special Agent of the FBI, McDonald, with a detective of the Somerville police, also drove to the same area at the same time in another car. The officers arrived at their destination not long after 6:00 P.M.

Sometime after 7:00 P.M. the officers saw a station wagon drive up and stop in front of 38 Franklin Street. Soon thereafter Agent Kehoe left his car and walked along the sidewalk toward that address. It was then dusk, but not yet dark, and it was raining. On two occasions as Kehoe walked along the sidewalk he saw a man come out of an alleyway leading to the side entrance of 38 Franklin Street and pass a carton, described by Kehoe at the trial as about the size and shape of the cartons in which Seagrams Seven Crown quarts were packed for shipment, to a man standing at the rear of the station wagon who put the cartons in the vehicle. Kehoe approached the station wagon from the rear and saw the tailgate put up when he was about 15 feet away. Kehoe continued to approach the station wagon

but he could not see what was in it from behind because of rain on the back window and because the contents of the vehicle were covered by a blanket or canvas. Looking into the vehicle through a side window, however Kehoe saw several cartons marked "Seagrams Seven Quarts."

Agent Kehoe then saw the appellant walking back down the alleyway toward the side entrance to 38 Franklin Street and called to him. The appellant returned and Kehoe asked the appellant his name. The appellant said "Philip Cali" and then Kehoe asked Cali what he knew about the liquor in the station wagon to which Cali replied: "I don't know anything about it." Kehoe then showed his credentials and placed Cali under arrest and advised him that he had the right to consult an attorney, the right not to say anything, and that anything he might say could be used against him in a court of law. At about this time, but it does not appear whether before or after Cali's arrest, the man who had been seen putting cartons into the station wagon fled, pursued unsuccessfully by one of the local police officers.

While Kehoe was walking toward the station wagon Agent McDonald drove his car to the scene and parked it in front of the station wagon. He then got out and joined Kehoe and Cali while they were standing on the sidewalk near the back of the station wagon talking. McDonald also saw that the station wagon contained cartons labelled "Seagrams Seven Crown Quarts." Neither agent asked Cali whether he owned the station wagon—it later appeared that it had been stolen—or anything about the vehicle.

After his arrest Cali was told by Agent Kehoe that he and Agent McDonald would like to search Cali's house but that he had the right to refuse. Cali, however, consented and agreed to sign a waiver. McDonald in his own handwriting then prepared the document quoted in full in the margin,[1] which he read to Cali and had Cali read back. McDonald asked Cali to sign the document which he did and the agents witnessed it. Cali and the agents then entered Cali's house where they found 44 cases of quart bottles of Seagrams Seven Crown whiskey in plain sight in the cellar. Later this whiskey was seized and the station wagon was driven to the Somerville police station where it was searched about 10:00 P.M. and 15 more cases of quarts of Seagrams Seven Crown whiskey in it were seized. The serial numbers on all 59 cartons matched the numbers on cartons which were part of the interstate shipment stolen in Somerville.

The defendant concedes that a search of reasonable scope made incidental to a lawful arrest is valid without a search warrant.[2] And he does not argue that the search in the instant case was not

1. "Winthrop, Mass.
9-11-60

I, Philip Cali, having been advised of my Constitutional right to refuse to exhibit my premises or have my premises searched do hereby voluntarily consent to such a search of my premises located 38 Franklin Street Winthrop Mass. Said search to be conducted under the direction of Special Agents John F. Kehoe and Roy J. McDonald of the F.B.I.

I hereby authorize these officers to remove any cases of liquor which they might find.

PHILIP CALI

Witnessed:
ROY J. MCDONALD
Special Agent F.B.I.
Boston, Mass.

JOHN F. KEHOE, JR.
Special Agent F.B.I.
Boston, Mass."

2. See Ker v. California, 374 U.S. 23, 41, 83 S.Ct. 1623, 1634, 10 L.Ed.2d 726 (1963), where Mr. Justice Clark said: "The doctrine that a search without warrant may be lawfully conducted if incident to a lawful arrest has long been recognized as consistent with the Fourth Amendment's protection against unreasonable searches and seizures," and, citing United States v. Rabinowitz, 339 U. S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950), added later on the same page: "The practicability of obtaining a warrant is not the controlling factor when a search is sought to be justified as incident to an arrest * * *."

"incidental" to his arrest or was "unreasonable" in its scope. His contention is that his arrest was made without probable cause and was therefore illegal which vitiated the legality of the accompanying search.

In Ker v. California, 374 U.S. 23, 34–35, 83 S.Ct. 1623, 1630 (1963), Mr. Justice Clark stated the issue before us in the instant case and the applicable principle for its solution. Quoting Brinegar v. United States, 338 U.S. 160, 175–176, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949), which in turn quoted Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543 (1925), Justice Clark said:

"The evidence at issue, in order to be admissible, must be the product of a search incident to a lawful arrest, since the officers had no search warrant. The lawfulness of the arrest without warrant, in turn, must be based upon probable cause, which exists 'where "the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that" an offense has been or is being committed.' "

See also Beck v. Ohio, 85 S.Ct. 223 (1964).

Application of the general rule to specific factual situations calls for a largely subjective judgment guided by decisions of the Supreme Court in the realm of search and seizure which, as Mr. Justice Harlan noted at page 45 of 374 U.S., at page 1646 of 83 S.Ct. of his concurrence in the result reached in Ker, "are hardly notable for their predictability."

The anonymous telephone tip relayed to the FBI by the Winthrop police raised at the most a mere suspicion of illegal activity in the appellant's house. Standing alone it does not constitute probable cause for the appellant's arrest. See Wong Sun v. United States, 371 U.S. 471, 480, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). The Government does not suggest the contrary. But the tip does not stand alone. Instead of arresting on nothing but the tip, the officers undertook to verify it by placing the premises identified therein under surveillance, and what they saw corroborated the tip in its essential elements.

On Saturday, September 10th, the officers knew that cartons containing quart bottles of Seagrams Seven Crown whiskey had been stolen in Somerville from an interstate shipment of freight. Early on Sunday evening, September 11th, they received a tip from an anonymous source that 200 cartons of stolen liquor, brand not disclosed, were at 38 Franklin Street, Winthrop, that some of it had been removed that day and that the rest of it was supposed to go out that night. Checking up on the tip they saw the appellant carrying cartons of the general size and shape of the cartons used to pack the liquor which had been stolen the day before in another Boston suburb from a side entrance of the house identified in the tip and handing the cartons to a man who loaded them into a station wagon parked at the curb in front of the house. They identified the cartons in the vehicle by label as cartons of the same brand and type, "Seagrams Seven Crown Quarts," as those which had been stolen, and when they asked the appellant what he knew about them he gave an evasive answer which they had good reason to believe to be false.

When the agents arrested Cali they did not have evidence sufficient for his conviction. They did not know to a certainty that the cartons he had been seen carrying out of his house contained stolen whiskey. But a long line of cases establishes that evidence sufficient to convict is not essential to a lawful arrest. Draper v. United States, 358 U.S. 307, 312, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). The agents' observations at the scene corroborated the tip in its essential elements and this as we read Draper v. United States and Ker v. California, supra, is enough to warrant men of reasonable caution in the belief that Cali had committed or was committing the offense they were investigating, particularly when considered with the inherently suspicious

circumstances of removal on a Sunday evening from a private dwelling in a residential area of substantial quantities of what gave every appearance of being liquor of the brand and packaging reported stolen two days before in a nearby suburb.

Taking the view that the arrest was on probable cause and therefore lawful, there is no occasion to consider and we express no opinion on the validity of the waiver executed by Cali at the agents' request.

Judgment will be entered affirming the judgment of the District Court.