Joseph NAPLES, Petitioner-Appellee,

v.

E. L. MAXWELL, Warden, Ohio Penitentiary, Respondent-Appellant.

No. 18099.

United States Court of Appeals
Sixth Circuit.

April 19, 1968.

Leo J. Conway, Columbus, Ohio, William B. Saxbe, Atty. Gen. of Ohio, David L. Kessler, Asst. Atty. Gen., on brief, for appellant.

John J. Kane, Jr., Cleveland, Ohio, Dan W. Duffy, Cleveland, Ohio, on brief, for appellee.

Before O'SULLIVAN, PHILLIPS and COMBS, Circuit Judges.

PHILLIPS, Circuit Judge.

This appeal presents the single question of whether an Ohio search warrant was issued without probable cause in violation of Fourth Amendment standards. The District Court granted a writ of habeas corpus, holding that the affidavit was insufficient under Aguilar v. State of Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and that this decision of the Supreme Court should be given retroactive effect. The warden of the Ohio Penitentiary appeals.

This is the second appeal from the action of the District Court in granting a writ of habeas corpus to Naples. On the prior appeal this Court reversed on grounds that did not involve the sufficiency of the affidavit to the search warrant. Naples v. Maxwell, 368 F.2d 219 (6th Cir.), cert. denied, 386 U.S. 971, 87 S.Ct. 1165, 18 L.Ed.2d 131.

Naples was arrested on July 24, 1962, as a result of a search conducted by police officers in Youngstown, Ohio, pursuant to a search warrant issued on that date. Evidence seized by the officers under the search warrant consisted of lottery slips, lottery records, various guns, including automatic weapons, gun silencers and ammunition, a Bolex camera and a mink coat. Naples was convicted and sentenced under an indictment returned by the Grand Jury of Mahoning County, Ohio. The two counts of the indictment involved on this appeal are for unlawfully promoting a numbers game or scheme of chance, for which he was sentenced to a term of from one to ten years, and for receiving and concealing stolen property, for which he was sentenced to a term of from one to seven years, the sentences to run concurrently.

An appeal was perfected to the Ohio Seventh District Court of Appeals, where the judgment of the trial court was affirmed. On appeal to the Supreme Court of Ohio Naples raised the same question presented on the present appeal, i. e., whether the search was illegal because the search warrant was not based on legally sufficient probable cause. The

Supreme Court of Ohio dismissed the appeal, State of Ohio v. Naples, 175 Ohio St. 550, 196 N.E.2d 591 (1964), and thereafter denied an application for writ of habeas corpus which raised the same issue. Naples v. Maxwell, 176 Ohio St. 443, 200 N.E.2d 340 (1964).

The affidavit to the search warrant is as follows, with two sentences italicized for emphasis:

## AFFIDAVIT FOR SEARCH WARRANT

STATE OF OHIO  
County of Mahoning  } s.s.:  
CITY OF YOUNGSTOWN  

### IN THE MUNICIPAL COURT OF YOUNGSTOWN

Before me, JUDGE MARTIN P. JOYCE, a Judge of the Municipal Court, personally appeared one GERALD BRACE who being first duly sworn according to law deposes and says:

That he believes and has good cause to believe that on or about the 24th day of July, 1962, in the City of Youngstown, Mahoning County, State of Ohio, Certain property to-wit: Explosives, gambling equipment, guns, narcotics, gambling records & monetary proceeds, stolen goods and any contraband.

In a house, building or place, described as follows, to-wit:

A certain one story brick building, located at and referred to for street purposes as 605 Carlotta dr. is occupied by Joseph Naples.

The affiant says he has good reasons to believe and does believe that the aforesaid property or some part thereof is still kept or concealed at the place aforesaid, and that there is urgent necessity for the search thereof to be made in the (nighttime) or (daytime). This affidavit is based on facts as follows: that affiant has received information which he believes to be reliable and true, that the above named items, or a part thereof, are being unlawfully kept on said premises in violation of law. *Informant states that there is a secret room in cellar. Admitted to officers that he is a part of the Naples gambling operation.* (Emphasis supplied).

/s/ GERALD BRACE

Sworn to before me by Gerald Brace, affiant, and subscribed in my presence this 24th day of July, 1962.

/s/ MARTIN P. JOYCE  
Judge of the Municipal Court

Joseph Naples  
24th    July    62

---

The facts underlying the issuance and execution of the search warrant are these: On July 24, 1962, at approximately 11:00 a. m., Detectives Gerald Brace and Martin Krohn of the Youngstown Police Department were called to police headquarters by Lieutenant Michael Carney, who at that time was Acting Chief of the Detective Bureau. Lieutenant Carney directed the two detectives to get a search warrant for the Joseph Naples house and stated that he had been told by an informant that there was a secret room in the cellar of this residence.

Detective Brace thereupon proceeded to type an affidavit for the purpose of obtaining a search warrant for the Naples premises. The statement that Brace be-

lieved, and had cause to believe, that gambling equipment, guns, narcotics, explosives, gambling records and monetary proceeds, stolen goods and contraband were in the Naples residence was based upon his knowledge of previous searches[1] of the houses of Naples and one of his brothers, and upon Naples' personal admission to Brace that he and his brother were gamblers.

As originally typed by Detective Brace the affidavit did not contain the two sentences italicized above. After filling out the affidavit, and before swearing to it, Detective Brace, accompanied by Detective Krohn, applied to the Honorable Martin P. Joyce, a judge of the Municipal Court of Youngstown, for a search warrant. After examining the affidavit, Judge Joyce concluded that it was not sufficient to justify the issuance of a search warrant. Judge Joyce thereupon asked the two detectives if they had any other information to support the issuance of a warrant. Detective Brace then told the Municipal Judge that an informant had disclosed that there was a secret room in the cellar of the Naples home. He also stated that he previously had a conversation with Joseph Naples in which Naples admitted that he and his brother were gamblers.

This additional information satisfied the Municipal Judge that probable cause existed. The Judge proceeded to print on the affidavit in ink the two sentences which are italicized in the above quotation. The same language was printed in ink on the search warrant. Detective Brace thereupon signed and swore to the affidavit and the Municipal Judge signed the warrant.

The details of the search are set forth as follows in the opinion and order of the District Court:

"After obtaining the search warrant, Detective Brace, Detective Krohn, and Detective Donald Baker went to 605 Carlotta Drive, the home of the petitioner. The petitioner was not at home when the detectives called. Petitioner's wife, however, informed the detectives that her husband was working at the Center Sandwich Shop. At the direction of Detective Krohn, Mrs. Naples called her husband at this restaurant and asked him to come home. Petitioner then talked to Detective Krohn on the phone and asked the detectives to pick him up at the restaurant because he did not have transportation to get home.

"Shortly after the telephone conversation the detectives met the petitioner at the Center Sandwich Shop and presented the search warrant to him. On the trip to his residence petitioner told the detectives that his mother and father had a doctor's appointment at 1:00 o'clock P.M. and asked the detectives not to go into the house until after his parents had left because they were along in their years and this search might upset them. The detectives honored petitioner's request, and waited in the back yard of 605 Carlotta Drive until they saw petitioner's parents leave the premises. The detectives then entered petitioner's home and proceeded directly to the cellar. There the detectives began searching for a secret room.

"There were two stairways leading into the cellar of the Naples' home. The detectives believed that a secret room would most likely be found under one of these stairways. Under the first stairway they examined, the detectives found a storage closet with shelves to hold canned foods. During the detectives' search of this closet, petitioner offered to remove these shelves. When the detectives were satisfied that the secret room was not located in this closet, they continued their search under the other staircase. The walls under the second staircase were panelled with knotty pine. As the detectives examined this wall, petitioner stated, 'I'll give you an ax and tear down the walls if you want to.' Detective Krohn continued the search

---

1. No question of the legality of the prior searches is made on this appeal.

by hitting the panelled wall, when all of a sudden a door popped open, exposing a room and its contents. The contents of this room included a quantity of guns of various kinds, gun silencers, ammunition, a bolex camera, a mink coat, lottery slips, and lottery records. Most of these items were introduced into evidence in the two Common Pleas Court trials."

We hold that the District Court was in error in ruling the affidavit to the search warrant to be insufficient under Aguilar v. State of Texas, supra. In that case the Supreme Court said:

"Although an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant, Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697, the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, see Rugendorf v. United States, 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887, was 'credible' or his information 'reliable.'" 378 U.S. at 114, 84 S.Ct. at 1514.

There can be no doubt that, before issuing the search warrant, Municipal Judge Joyce made an independent determination that probable cause existed. After conducting personal inquiry and satisfying himself of the persuasiveness of the facts relied upon, including the fact that Naples had admitted to Officer Brace that he and his brother were gamblers, Judge Joyce inserted the two sentences above quoted. With these sentences added, it is our opinion that the affidavit meets the test of Aguilar.

The issuance and execution of this search warrant and the trial conviction of Naples took place prior to decision of the Supreme Court in Aguilar, which was announced on June 15, 1964. The District Court ruled that the decision in Aguilar is retroactive in its application. Since we find the affidavit to be sufficient, it is not necessary to pass upon the question of whether Aguilar is retroactive or only prospective in its effect.

Reversed.