**Joe Givas ACOSTA, Petitioner,**

v.

**Dr. George J. BETO, Director, Texas Department of Corrections, Respondent.**

**Civ. A. No. 68–H–191.**

United States District Court
S. D. Texas,
Houston Division.

March 11, 1969.

As Amended on Denial of Rehearing
March 24, 1969.

Woody & Rosen (Clyde W. Woody and Marian S. Rosen), Houston, Tex., for petitioner.

Crawford C. Martin, Atty. Gen., of Texas, and Lonny F. Zwiener, Asst. Atty. Gen., of Texas, Austin, Tex., for respondent.

INGRAHAM, District Judge.

*Memorandum:*

The petitioner, Joe Givas Acosta, was convicted of possession of heroin with a prior conviction of the same offense alleged for enhancement. A sentence of thirty years confinement in the state penitentiary was imposed by Criminal

District Court No. 3 of Harris County, Texas, on October 20, 1965. The conviction was affirmed by the Court of Criminal Appeals of Texas, Acosta v. State, 403 S.W.2d 434 (Tex.Crim.App.1966), and motion for rehearing was denied, one judge dissenting. Id. at 438. Petition for writ of certiorari to the United States Supreme Court was denied on April 17, 1967, Justices Warren, Douglas and Fortas dissenting. Acosta v. Texas, 386 U.S. 1008, 87 S.Ct. 1352, 18 L.Ed.2d 449 (1967).

■ Petitioner filed his application for the writ of habeas corpus in this court on March 11, 1968. The questions raised in the petition were raised and passed upon both by the trial court and the Court of Criminal Appeals. Petitioner has therefore exhausted his state remedies. Reed v. Beto, 343 F.2d 723 (5 CA 1965), aff'd sub nom. Spencer v. Texas, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967).

The facts of the case, as set out in the opinion of the Court of Criminal Appeals, are not in issue. The grounds upon which petitioner asserts the writ should be granted involve questions of law. They are essentially three:

(1) Heroin seized at the time of his arrest was inadmissible because the affidavit supporting the issuance of the search warrant was insufficient to establish probable cause;

(2) The trial court did not conduct the hearing on the voluntariness of petitioner's confession in accordance with proper constitutional standards; and

(3) The trial court erred in not requiring the affiant to identify the informant whose information constituted part of the probable cause for the issuance of the warrant.

An evidentiary hearing on petitioner's application was held on January 6, 1969. Based on the evidence adduced at the hearing, the state court record, and the briefs of counsel, the court enters this memorandum on the merits of the petition, the following to constitute findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52.

I.

■ The affidavit challenged as being insufficient to support the issuance of the search warrant reads as follows:

"On the 14th day of May, 1965, affiants received reliable information from a credible person that heroin was being possessed by Joe Givas Acosta, at 7515 Force Street, Houston, Harris County, Texas. Although I do not desire to name this person, on about four prior occasions he has given information to me concerning narcotics being possessed by certain individuals, and on every occasion his information has proven to be true. Based upon the information he gave to me, affiants on the morning of the 14th day of May, 1965, set up a surveillance of the house located at 7515 Force Street, and from approximately 7:00 a. m. to 10:00 a. m. of that day we observed several persons whom we know to be users of narcotics, enter the house, remain for approximately five minutes each and then leave."

■ As the first step in the analysis of this affidavit, it must be remembered that "(i)t is elementary that in passing on the validity of a warrant, the reviewing court may consider *only* information brought to the magistrate's attention." Aguilar v. Texas, 378 U.S. 108, 109 n. 1, 84 S.Ct. 1509, 1511, 12 L.Ed.2d 723 (1964) (emphasis by the court). Testimony heard in the trial court or in the hearing in this court which might tend to bolster the affiants' allegations is therefore irrelevant unless the information was conveyed to the magistrate at the time the warrant was issued. See Lopez v. United States, 370 F.2d 8, 10 (5 CA 1966); United States v. Myers, 270 F.Supp. 734, 738 (E.D.Pa. 1967), rev'd on other grounds, 398 F.2d 896 (3 CA 1968). In this case, evidence was presented in the trial court which showed that the affiant officers knew the two individuals seen entering Acos-

ta's house to be narcotics users from first-hand knowledge—they knew their names and that charges were pending against them.[1] The record is devoid of any evidence, however, showing that this information, or any other information, was presented to the justice of the peace who issued the warrant.[2] To the contrary, there is positive testimony from one of the officers that only the information contained in the affidavit was given to the magistrate. Moreover, the magistrate could not even remember issuing the warrant, much less whether additional information was received. In this posture, "the affidavit must stand or fall by itself. It is only reasonable to assume that had there been any \* \* \* (other matters presented to the magistrate), the respondents would have called them to the Court's attention in their answers or at the hearing." Foster v. Gilbert, 264 F.Supp. 209 (S.D.Fla.1967).

■ The fact that the affidavit must stand alone, the court being required to ignore all information adduced at the trial and at the hearing in this court which was not presented to the magistrate, presents an interesting paradox. It is certain that searches under a warrant are preferred, and that "in a doubtful or marginal case a search under a warrant may be sustainable where without one it would fall." United States v. Ventresca, 380 U.S. 102, 106,

85 S.Ct. 741, 744 (1965); Jones v. United States, 362 U.S. 257, 270, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). Therefore, if certain information were sufficient to constitute probable cause for a search without a warrant, the same information would certainly support probable cause for the issuance of a warrant. But the procedure for determining probable cause in each situation is different. In warrantless search cases, the determination of the reasonableness of the search is, and must be, a judicial determination after the fact. A full-blown hearing delving in great detail into the information which was available to the police is held, either on motion to suppress or at the trial. The officers are questioned at length about the type of information upon which the reasonableness of the search was based, the source, reliability, and reasons for their reliance upon the information, as well as the extent and reliability of their corroborating evidence. All this evidence is considered by the court in its determination as to whether there was sufficient probable cause for the search. All this assumes that the search was one of the limited type allowed without a warrant, of course.

■ In situations in which the validity of a search must depend on the validity of a warrant, all the information available to the officers must be brought to the

1. It is unclear whether this information influenced the Court of Criminal Appeals' decision to uphold the sufficiency of the affidavit. The court said:

"(t)he court heard evidence on the issue of probable cause in the absence of the jury, and, in the course thereof, it was developed that two of the 'several people' whom the officers observed to enter appellant's house, remain approximately five minutes and then leave were Victor Valdez and Martin Damian, each of whom had narcotics charges pending against them at the time of appellant's trial and each of whom were known by the officers to be narcotics addicts. We hold that the affidavit in the instant case does set forth a sufficient basis upon which a finding of probable cause could be

made. United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed. 2d 684." (1965).
Acosta v. State, 403 S.W.2d 434, 436 (Tex.Crim.App.1966).
The basis of the decision is particularly obscure in that the court cites Ventresca hard on the heels of apparently crediting the officer's testimony to bolster the affidavit. In Ventresca the affidavit was extensive. All the requisite information, spelled out in great detail, was in the affidavit; resort to other information was unnecessary.

2. In addition to the facts concerning the names of the known narcotics users, one of the affiants testified at the hearing in this court that the informer told him that he had seen the narcotics at Acosta's house.

attention of the magistrate. If the officers fail to communicate any information later deemed necessary for a finding of probable cause, the error is irreparable.

■ The results in the two situations are eminently sensible. Certainly no one would quarrel with the propriety of testing the officer's basis for probable cause in warrantless search cases on the one hand, or testing the sufficiency of probable cause from the viewpoint of the magistrate on the other. And it is patently reasonable in judging the magistrate's determination that only the information brought before him should be considered. But the paradox is this: it is settled policy that the courts are to encourage officers to proceed under warrants, that affidavits need not be hypertechnical documents, and that a "trial" on the question of probable cause before the magistrate is neither necessary nor desirable. From a practical standpoint, however, it would seem that a warrantless search would stand a better chance of being upheld than a search under a warrant. This is simply because, as noted above, all the details surrounding a warrantless search may be explored at trial. The prosecution, being more knowledgeable about the matters which must be brought to the fore than the police, can extract from the officers the requisite golden phrases which they might otherwise have overlooked or felt superfluous had they taken out a warrant. And the argument that the officers could merely tell the magistrate just a little more is unconvincing: the plethora of short, underworded affidavits challenged both before and after Aguilar clearly evidences most affiants' reticence.

The foregoing is not a plea to change the system. It is first, to delineate the court's scope of review, and second, to point out an anomaly which, it will be shown, is particularly pertinent to this case.

Whether an affidavit is sufficient to establish probable cause has been the subject of several Supreme Court decisions since Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), held the exclusionary rule applicable to the states. The case which apparently has had the greatest effect on the form taken by search warrant affidavits is Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509 (1964). In Aguilar the Court held that when an affidavit is based upon hearsay information received from an informant, the affidavit must show (1) the manner in which the informant received his information—the underlying circumstances from which the informant concluded the narcotics were where he said they were, and (2) the "underlying circumstances from which the officer concluded that the informant * * * was 'credible' or his information 'reliable'." Id. at 114, 84 S.Ct. at 1514. Evidently the efforts by officers, magistrates, and the courts to comport with Aguilar and its progeny have been less than successful. The Supreme Court, therefore, "believing it desirable that the principles of Aguilar should be further explicated" recently ruled on the constitutionality of another search and seizure in Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637. Although Aguilar was held to have only prospective application,[3] there evidently is no question as to the retroactivity of Spinelli. The Court's language indicates that Spinelli only amplifies Aguilar; the Fifth Circuit, sub silentio, apparently agrees.[4]

The principles enunciated in Aguilar, as "explicated" by Spinelli, make it clear that the first portion of the affidavit in the instant case is deficient. The affiant declared only that the informant claimed that heroin was being possessed by

3. Flores v. Beto, 374 F.2d 225 (5 CA), cert. denied, 387 U.S. 948, 87 S.Ct. 2087, 18 L.Ed.2d 1338 (1967); Davis v. Beto, 368 F.2d 999 (5 CA 1966), cert. denied, 386 U.S. 1040, 87 S.Ct. 1498, 18 L.Ed. 2d 608 (1967); see also Doby v. Beto, 371 F.2d 111 (5 CA 1967). But see Naples v. Maxwell, 271 F.Supp. 850, 855 (S.D.Ohio 1967), rev'd on other grounds, 393 F.2d 615, 618 (6 CA 1968).

4. See United States v. Rich, 407 F.2d 934 (5 CA, February 21, 1969).

Acosta at a certain address. "The 'mere conclusion' that petitioner possessed narcotics was not even that of the affiant himself; it was that of an unidentified informant. The affidavit * * * does not even contain an 'affirmative allegation' that the affiant's unidentified source 'spoke with personal knowledge.' For all that appears, the source here merely suspected, believed or concluded that there were narcotics in petitioner's possession. The magistrate here certainly could not 'judge for himself the persuasiveness of the facts relied on * * to show probable cause'. He necessarily accepted 'without question' the informant's 'suspicion', 'belief' or 'mere conclusion'." Aguilar v. Texas, supra, 378 U.S. at 113–114, 84 S.Ct. at 1513.

 The first Aguilar requirement was not met, but the second, that the affiant demonstrate why he believed the informant was reliable, was. The affiants' statement that the informant had given information concerning narcotics being possessed by other persons on four prior occasions, and that the information had proven to be true, is apparently adequate to satisfy the "underlying circumstances" upon which the affiant concluded that the informant's information was reliable.[5] But it has been held that the affiant's statement vouching for the reliability of the informant is "too barren either to credit or to corroborate the hearsay statements of the informant"[6] when, as here, there is no intimation as to where the informant received his information. In other words, Aguilar's first requirement must be met for the second to be of any benefit.

 Inquiry must therefore turn to whether the affidavit sets forth "any other sufficient basis upon which a finding of probable cause could be made."[7] Is there anything else in the affidavit which would have given the magistrate reason for crediting the source of the information?[8] In Aguilar, the Court said that had a surveillance been conducted by the police, and had the "fact and results of such a surveillance * * been appropriately presented to the magistrate, this would, of course, present an entirely different case."[9] Thus in a case in which the informant's tip is not supported by the requisite underlying circumstances showing how he received his information, if other information is presented to the magistrate corroborating the tip, probable cause might be found.[10] But it is obvious that a surveillance will not necessarily constitute sufficient corroboration; it can be pertinent only if the activities and information obtained, and reported to the magistrate, reasonably support an inference that the informant's report was true.[11]

5. See Rugendorf v. United States, 376 U.S. 528, 530, 84 S.Ct. 825, 11 L.Ed.2d 887 (1964); Jones v. United States, 362 U.S. 257, 267–268, n. 2, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); United States v. Suarez, 380 F.2d 713 (2 CA 1967); Gabriel v. United States, 366 F.2d 726 (9 CA 1966); United States v. Freeman, 358 F.2d 459 (2 CA), cert. denied, 385 U.S. 882, 87 S.Ct. 168, 17 L.Ed.2d 109 (1966).

6. United States v. Roth, 391 F.2d 507, 510 (7 CA 1968); see also Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (Jan. 27, 1969) (concurring opinion).

7. Giordenello v. United States, 357 U.S. 480, 486, 78 S.Ct. 1245, 1250, 2 L.Ed.2d 1503 (1958).

8. See, e.g., Travis v. United States, 362 F.2d 477 (9 CA), cert. denied, 385 U.S. 885, 87 S.Ct. 179, 17 L.Ed.2d 113 (1966).

9. Aguilar v. Texas, supra 378 U.S. at 109 n. 1, 84 S.Ct. at 1511.

10. See, e.g., Travis v. United States, supra note 8.

11. In United States ex rel. De Negris v. Menser, 360 F.2d 199 (2 CA 1966), the court held that the informant's assertion was deficient under Aguilar. The affidavit contained, however, a lengthy recitation of facts which the officers presented for the purpose of bolstering the tip. The court found that:

"the fruits of this surveillance were not, standing by themselves, sufficient to support a finding of probable cause; nor were they, considered in connection with the informant's statements, enough of a confirmation of the reliability of those statements to furnish a substantial basis for the existence of probable cause."

Id. at 202–203.

■ In this case the affiants stated that on the morning of May 14, 1965, they set up a surveillance at the address given them by the informant. During a three hour period, they "observed several persons whom we know to be users of naroctics, enter the house, remain for approximately five minutes each, and then leave." We must first ask whether this statement, standing alone, would support a finding of probable cause. It is obvious that it would not. So long as they are lawfully free, narcotics users may come and go as they please; certainly no magistrate would issue a search warrant for every building or house in which a narcotics user was seen to enter. To do so would be "ferreting out crime" of the worst degree.

■ The question must be, therefore, whether the observation coupled with the informant's tip will support probable cause. This is, of course, more difficult. It is clear that activity which might otherwise be considered harmless, if consistent with even a possibly unreliable tip, may be sufficient basis for a finding of probable cause.[12] But what kind of activity is required? How suspicious must it be in light of the informant's statement? How long must the activity continue? The court need cite no cases to illustrate that there are no answers to these questions. The facts in each search and seizure case (and the cases are legion) are different. In each case the question of probable cause must be decided on its own facts.

After examining the facts submitted to the magistrate to bolster the informant's information, the court is compelled to hold that they are insufficient to overcome the other deficiency in the affidavit. In so holding the court need not reach the question of whether the fact that narcotics users might have visited the petitioner's house would be adequate to corroborate the tip.[13] This is simply because the officers' assertion that the individuals were narcotics users, without anything more, must be considered to be only the affiants' suspicion or belief.

In a case with facts similar to the instant case, the Second Circuit held that such an averment at best was only a suspicion of illegal activity. The court's language is highly persuasive:

"The affidavit also disclosed that the petitioner and his wife had been listed in the police records as having been 'charged' with pool selling in 1960. There is no mention of the disposition of the charge, and, as the record stands, it cannot be taken as even hearsay evidence that petitioner actually engaged in gambling activities in 1960. At best, it only implies that the police suspected them of gambling activity at that time. It may be noted that the petitioner in the present case was charged as a third offender; why the two prior convictions were not mentioned in the affidavit is not clear. This would have given support to inferences to be drawn from other statements in it. But we cannot consider these prior convictions because 'the re-

12. See Bailey v. United States, 386 F.2d 1, 3 (5 CA 1967), cert. denied, 392 U.S. 946, (1968); Cali v. United States, 338 F.2d 974 (1 CA 1964), cert. denied, 380 U.S. 958, 85 S.Ct. 1096, 13 L.Ed.2d 974 (1965); Lane v. United States, 321 F. 2d 573 (5 CA 1963), cert. denied, 381 U.S. 920, 85 S.Ct. 1551, 14 L.Ed.2d 440 (1965).

13. The court is not unmindful of Dixon v. Florida, 403 F.2d 49 (5 CA 1968) (second appeal), wherein the Fifth Circuit held that an affidavit stating that "known narcotics addicts" were observed "going in and out of the described prem-

ises" was sufficient. In that case, however, it is evident that other portions of the affidavit more adequately met *Aguilar's* requirements. The attack on the sufficiency of the affidavit was grounded on a failure "to name the two confidential informants and * * * (a failure) to state the dates on which *they allegedly saw or purchased narcotics.*" Dixon v. Florida, 388 F.2d 424, n. 1 (5 CA 1968) (first appeal) (emphasis supplied). Had the first portion of the affidavit in this case been more complete, the surveillance might have carried the same inference of illegal activity as found in Dixon.

viewing court may consider only information brought to the magistrate's attention.' " [14]

That such an assertion is inadequate was also noted in Spinelli. After deciding that the informant's tip was insufficient under Aguilar, the Court said, "(t)his is not to say that the tip was so insubstantial that it could not properly have counted in the magistrate's determination. Rather it needed some further support. * * * All that remains to be considered is the flat statement that Spinelli was 'known' to the FBI and others as a gambler. But just as a simple assertion of police suspicion is not itself a sufficient basis for a magistrate's finding of probable cause, we do not believe it may be used to give additional weight to allegations that would otherwise be insufficient." [15]

 The affidavit in this case was inadequate to support the magistrate's finding of probable cause, but it does not necessarily follow that the petitioner was deprived of a fair trial. And it is at this point that the contradiction between warrantless and search warrant cases becomes apparent. Although the evidence would have been inadmissible if its admissibility depended solely upon the validity of the search warrant, if the search was reasonable and made incident to a lawful arrest based upon probable cause, the search and seizure may be held lawful.[16] When an officer proceeds under a warrant which is even void on its face, the arrest and search and seizure are not invalidated if the officers had adequate knowledge independent of the warrant to constitute probable cause.[17] The proper test to be applied "in a federal habeas court in testing the legality of an arrest is federal probable cause." [18] The general rule is that probable cause to arrest without a warrant is constitutionally sufficient "if at the time of the arrest the arresting officer had knowledge of facts and circumstances or reasonably trustworthy information which would warrant a prudent man in believing that the petitioner had committed or was comitting an offense." [19]

 In this case the court believes that had all the information available to the officers been included in the affidavit, the warrant would have been sufficient. That same information is likewise sufficient to constitute probable cause to arrest and search without a

14. United States v. Menser, 360 F.2d 199, 203 (2 CA 1966). As mentioned earlier, the affiants in the present case did not tell the magistrate the reasons why they believed the individuals were narcotics users. Had they done so, to borrow from the Supreme Court, "this would, of course, present an entirely different case." Aguilar v. Texas, supra.

15. Spinelli v. United States, supra at 418, 89 S.Ct. at 590.

16. It is important to point out that the petitioner was arrested immediately upon the officers' arrival at his house. The warrant handed to the petitioner was a combination arrest-search warrant, permitted by Vernon's Ann.Tex.Code, Crim. P. Art. 18.11 (former Art. 314, Tex.Code Crim.P. (1925)).

17. Giordenello v. United States, 357 U.S. 480, 488, 78 S.Ct. 1245 (1958); United States v. Rabinowitz, 339 U.S. 56, 60, 70 S.Ct. 430, 94 L.Ed. 653 (1950);

United States v. White, 342 F.2d 379, 381 (4 CA), cert. denied, 382 U.S. 871, 86 S.Ct. 148, 15 L.Ed.2d 109 (1965); Hagans v. United States, 315 F.2d 67, 69 (5 CA), cert. denied, 375 U.S. 826, 84 S.Ct. 68, 11 L.Ed.2d 58 (1963); Williams v. United States, 273 F.2d 781 (9 CA), cert. denied, 362 U.S. 951, 80 S. Ct. 862, 4 L.Ed.2d 868 (1960); United States v. Clark, 289 F.Supp. 610, 616 (E.D.Pa.1968).

18. Paige v. Potts, 354 F.2d 212, 214 (5 CA 1965); see also Harris v. Stephens, 361 F.2d 888, 892 (8 CA 1966), cert. denied, 386 U.S. 964, 87 S.Ct. 1040, 18 L. Ed.2d 113 (1967).

19. Russell v. United States, 396 F.2d 771, 772 (5 CA 1968); see McCray v. Illinois, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967); Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949).

warrant.[20] The fact that the informant had been known to the officers for about one-and-a-half years, and more importantly, that he had seen the narcotics in Acosta's house are particularly compelling. In addition, the officers not only knew who the narcotics users seen entering Acosta's house were by name, they had had personal contact with them in the past, and knew specifically that charges were pending against them.[21] It should also be noted that when the officers arrived at the petitioner's house, he was observed to be leaving in his car. Armed with this information, it was reasonable for the officers to believe that a crime had been committed and that Acosta might be attempting to flee. Their stopping and arresting him and subsequently searching the premises was proper and within constitutional limitations. The evidence seized was therefore admissible.

## II.

■ As a corollary to his challenge to the sufficiency of the affidavit in this case, the petitioner has launched a broad scale attack on the type of "form" search-arrest warrant affidavit utilized by the Houston Police Department. He contends that the information in the affidavits is prefabricated and thus a fraud is being practiced on the courts. This contention failed in the trial court, the Court of Criminal Appeals, and it fails here. The petitioner has failed to carry his burden of proof that any type of fraud is or was being committed. Indeed, it is only reasonable for police departments to use or even encourage similar verbiage in search warrant affidavits. The completeness and conciseness now required in affidavits is such that a large police department with hundreds of officers swearing out warrants each year would be almost foolish to leave the sufficiency of the affidavits to chance. Form affidavits are perhaps open to suspicion, but the court believes they reflect a good-faith effort by the police to comport with the principles of Aguilar and other Supreme Court cases. That they often do not succeed is unfortunate, but it is not surprising.

## III.

■ The petitioner's second contention refers to the hearing on the voluntariness of his confession held outside the presence of the jury. It is undisputed by the respondent that on cross-examination, the petitioner was questioned repeatedly, over objection, as to the truth or falsity of certain admissions contained in the confession. Petitioner cites Rogers v. Richmond, 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760 (1961), and Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), as authority for the proposition that while a trial judge will hear evidence going to the voluntariness of a confession, he may not allow inquiry into the truth or falsity of the confession, and if such an inquiry is allowed, the conviction must be set aside. The petitioner has apparently misread Rogers, and the contention is without merit.

The contention was raised in Delespine v. Beto, 297 F.Supp. 961, decided by this court on November 27, 1968. The court held that mere inquiry into the truth or falsity of what is contained in the confession is not enough. The question should be whether there is evidence that the trial judge based his decision upon the

---

20. In a proper case it would perhaps be correct to remand the case for a hearing to determine the question of probable cause for arrest without a warrant. See, e.g., Giordenello v. United States and United States v. Rabinowitz, supra. In this case, however, the trial court record and the evidence heard at the hearing in this court amply reflect facts sufficient to support a finding of probable cause. Remanding would appear to be unnecessary.

21. Officer Michael Chavez, who received the call from the informant and who took part in the surveillance and arrest, was shown to be an experienced member of the Houston Police Department Narcotics Office. An officer for over thirteen years and in the narcotics office for eleven, he was particularly qualified to know the narcotics users and whether their activities were suspicious.

reliability of the confession. If there is, as there was in Rogers v. Richmond, then an error of constitutional dimension was committed. A new hearing on the voluntariness of the confession would then be required as per Jackson v. Denno. It is clear, however, that the record in this case does not indicate that the trial judge based his decision on whether the confession was truthful. To the contrary, the trial judge made a determined effort to steer counsel in the direction of the question of voluntariness only. Mere reference to whether certain matters in the confession were true or false, in the absence of any evidence that the judge applied an incorrect constitutional standard, is inadequate to prove error.

### IV.

Petitioner thirdly contends that the trial court erred in not requiring the disclosure of the informant's name. The contention is likewise without merit. It was recently reiterated in McCray v. Illinois, 386 U.S. 300, 87 S.Ct. 1056 (1967), that "(w)hen the issue is not guilt or innocence, but, as here, the question of probable cause for an arrest or search, the * * * police officers need not invariably be required to disclose an informant's identity if the trial judge is convinced, by evidence submitted in open court and subject to cross-examination, that the officers did rely in good faith upon credible information supplied by a reliable informant." Id. at 305, 87 S.Ct. at 1059. Unlike Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed. 2d 639 (1957), it was not shown in this case that the informer's "possible testimony was highly relevant * * *" that he "might have disclosed an entrapment * * *" or "might have thrown doubt upon petitioner's identity or on the identity of the package." See McCray v. Illinois, supra at 310, 87 S.Ct. 1062. The trial judge's ruling on the nondisclosure of the informant's identity was without error.

The petition for the writ of habeas corpus will be denied. The clerk will notify counsel to draft and submit judgment accordingly.