Pomposa **OLIVIA GARZA**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 42957.

Court of Criminal Appeals of Texas.

July 15, 1970.

---

Clyde W. Woody (on appeal only), Marian S. Rosen (on appeal only), John P. Farra (on appeal only), Houston, for appellant.

Carol S. Vance, Dist. Atty., James C. Brough, and Ted Hirtz, Asst. Dist. Atty., Houston, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

DOUGLAS, Judge.

The conviction is for the possession of heroin; the punishment, fifty years.

Officers of the Houston Police Department found 177 grams of 58% heroin at appellant's lounge. The record shows that appellant was arrested on West Dallas Street and the officers proceeded to her home at 1102 Stanford Street and began the search. There she asked to talk to Officer Michael Chavez. Before she made any statement, Officer Chavez warned her that she had a right to have a lawyer present to advise her prior to or during any questioning; that if she were unable to employ a lawyer, she had a right to have a lawyer appointed to counsel with her prior to or during any questioning; that she had a right to remain silent and not make any statement at all; that any statement she made might and probably would be used against her at a trial; and that she had a right to terminate the interview at any time.[1] She then told Officer Chavez that they would find the heroin at her lounge on West Gray. The officers at the direction of appellant found heroin at various places in the lounge.[2]

The sufficiency of the evidence is not challenged. Appellant presents two grounds of error wherein she complains of the search of her premises.

In the first ground of error, it is contended that the heroin was obtained as a result of a search warrant based on an affidavit that did not show probable cause for the search. The affidavit is stronger than the affidavits in Acosta v. State, Tex.Cr.App., 403 S.W.2d 434; Gonzales v. State, Tex.Cr.App., 410 S.W.2d 435; Brown v. State, Tex.Cr.App., 437 S.W.2d 828, all of which were held sufficient to show probable cause.

The affidavit in the present case, made before a corporation court judge, omitting the formal parts, is as follows:

"Before me, the undersigned authority, on this day personally appeared the undersigned affiants, who being by me severally sworn, upon their oaths state, that: A certain building, house and place, occupied and used as a private residence, located in Harris County, Texas, described as a one story brown brick building, located at 1102 Stanford Street, in the City of Houston, County of Harris and the State of Texas, and all out buildings and motor vehicles appurtenant to the above described prem-

---

1. Judge Walton then conducted a hearing and found that her statement was made voluntarily after having been warned. The matter of voluntariness of the oral confession was also submitted to the jury.

2. The prosecutor argued without objection that heroin of the value of $256,650 was found there.

ises and being the building, house or place of Olivia Garza a Latin American Female and other person or persons unknown to the affiants by name, identity, or description is a place where we each have reason to believe and do believe that said party so occupying and using, as a private residence, the said building, house and place has in Her possession therein narcotic drugs, as that term is defined by law, and contrary to the provisions of law, and for the purpose of the unlawful sale thereof, and where such narcotic drugs are unlawfully sold; that on or about the 20th day of June, A.D. 1968, SEE AFFIDAVIT ATTACHED

"On June 16, 1968, affiants received information from a reliable and credible person that Olivia Garza had Heroin in her possession for the purpose of sale. The informer further stated that Olivia Garza was selling Heroin at the La Habana Lounge at 508 Louisiana and Garza's Lounge, 240 West Gray, and that she lived at 1102 Stanford Street. This person giving the information on Olivia Garza has in the past on three occasions given affiants information on people possessing narcotics for use and sale. And on each occasion the information proved to be true and correct.

"The affiants believing the information to be true and correct set up surveillance on the La Habana Lounge 508 Louisiana Street between the hours of 12;00 PM and 5;30 PM on June 17, 1968. At 2;30 PM the affiants observed a Latin American Male who is a known user of narcotics drive up in front of the La Habana Lounge and park. Olivia Garza came out of the lounge, and went to the window on the drivers side of the automobile and leaned over and appeared to talk to the driver. Olivia Garza put her hand through the window of the automobile and then straightened up and reentered the Lounge. As she was reentering the lounge she appeared to be examining something in her hand. At 3;55

PM affiants observed another Latin American Male who is a known user of Narcotics enter the lounge at 508 Louisiana Street. He was in the Lounge for approximately one minute and exited at approximately 3;56 PM and stood beside the door of the Lounge. Olivia Garza walked out of the Lounge and approached the Latin American Male. As she approached the Latin American Male he reached into his right trouser pocket and handed something to Olivia Garza, which she took, looked at and then returned to the inside of the lounge, came back out side to the Latin American Male handed something to him which he examined and placed in his left shirt pocket, then turned and walked South on Louisiana to Texas Avenue. Olivia Garza returned inside the lounge.

"On June 18, 1968, affiants resumed surveillance on the La Habana, 508 Louisiana, between the hours of 12;15 PM and 4;00 PM. At 1;20 PM, affiants observed Olivia Garza exit from the lounge walk north on Louisiana to Prairie, west on Prairie to the south east corner to Prairie and Smith, where she met a Latin American Male who is a known user of Narcotics. Olivia Garza handed something to the Latin American Male and accepted something in return. Olivia Garza turned and returned to the lounge by the same route. The Latin American Male walked north on Smith Street to Preston Avenue. At 2;15 PM affiants observed a Latin American Malw who is a known user of narcotics parked in front of the Lounge, at 508 Louisiana. Olivia Garza walked out of the lounge directly to the automobile, where she handed something through the window to the Latin American Male driving and *excepted* something in return. She then turned and walked inside the lounge. The Latin American Male drove north on Louisiana to Prairie and west on Prairie.

"On June 19, 1968, Affiants set up surveillance on Garza's Lounge at 240

West Gray at 12;10 PM. At 2;30 PM affiants observed Olivia Garza leave the lounge at 240 West Gray, enter a white and brown 1955 Chevrolet with a Latin American Female and two children. Officer Bell followed the 1955 white and brown Chevrolet occupied by Olivia Garza to 1102 Stanford. She entered the house at 1102 Stanford and the unknown Latin American Female and the children remained in the automobile. Olivia Garza entered the house at approximately 2;35 PM and exited at approximately 2;39 PM and drove to the 1400 block of Genesee Street where she parked. While Officer Bell was following Olivia Garza, Officer Chavez maintained surveillance at the Lounge at 240 West Gray, and observed a Latin American Male park a 1957 Chevrolet in front of the lounge and enter. The subject returned immediately to his automobile and was recognized as a known user of narcotics by Officer Chavez. The Latin American Male drove his automobile by Officer Chavez to the 1400 block of Genesee where he met Olivia Garza and an exchange was made, between the occupants of the two automobiles. The Latin American Male continued north on Genesee and Olivia Garza returned to the lounge at 240 W. Gray."

Appellant relies on the opinion in Acosta v. Beto, 297 F.Supp. 89 (U.S.D.C., S.D. Texas, 1969), which held (contrary to this Court) that the warrant based on an informant's tip plus surveillance of the officers was insufficient under Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723, and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637. The Court held, however, that the information possessed by the officers but not alleged in the affidavit could be combined with the attempted flight and circumstances of Acosta's apprehension to justify an arrest and subsequent search without a warrant.

After appellant filed his appellate brief in the trial court, the United States Court of Appeals for the Fifth Circuit held (as did this Court) in Gonzales v. Beto and Acosta v. Beto, 425 F.2d 963 (5th Cir., May 6, 1970), that the affidavits in those cases were sufficient to show probable cause for the issuance of a search warrant and were not in violation of the Fourth Amendment provision against unreasonable searches and seizures.

The Court discussed the Aguilar and Spinelli cases and noted that the informant's tip, the statement to show reliability of the informant and the surveillance of the officers in each case were sufficient for a detached magistrate to believe the elements offered to show probable cause.

In accordance with our previous decisions and that of the Fifth Circuit in the Gonzales and Acosta cases, supra, we hold that the affidavit in the present case is sufficient to show probable cause.

The first ground of error is overruled.

Appellant's second ground of error is as follows:

"The trial court committed reversible error in allowing evidence to be introduced against Defendant which was obtained by virtue of the execution of the arrest warrant contained within the search warrant as aforesaid for the reason that said arrest warrant is an unauthorized delegation of judicial authority to the executive branch."

Appellant contends that the combination search and arrest warrant was invalid, and the statement of appellant and the results of the search should not have been admitted.

Article 725b, Sec. 16, Vernon's Ann.P. C., provides for the issuance of search warrants for narcotic drugs and that all proceedings relative thereto shall conform as near as may be to the provisions of Title 6 of the Code of Criminal Procedure. The pertinent statutes under Title 6 of the 1925 Code of Criminal Procedure are now Articles 18.10 and 18.11 of the 1965 Code and they provide that a warrant to arrest

may issue with a search warrant and that a search warrant may order an arrest.

In Collins v. State, 170 Tex.Cr.R. 196, 339 S.W.2d 913, this Court held that the arrest of Collins at a cafe away from the premises searched was authorized under the terms of the search warrant and the subsequent search was legal.

In Doby v. State, Tex.Cr.App., 363 S.W.2d 286, this Court held that Garcia v. State, 170 Tex.Cr.R. 328, 340 S.W.2d 803, was controlling and wrote:

> "[T]he search warrant and the warrant of arrest therein authorized the arrest of the appellant who was in possession of the premises described. The arrest being lawful the search of appellant's person incident thereto was legal."

In Giacona v. State, 169 Tex.Cr.R. 101, 335 S.W.2d 837, counsel contended that the order for the arrest of Tony Giacona was not valid because it was contained in the search warrant, and such contention was answered adversely to him. The order for an arrest has been authorized by statute and has been approved by this Court. We find no delegation of authority from the judiciary to the executive branch. The second ground of error is overruled.

The judgment is affirmed.