425 F.2d 963
 Adiel F. GONZALES, Petitioner-Appellant,
v.
Dr. George J. BETO, Director, Texas Department of
Corrections, Respondent-Appellee.
Joe Givas ACOSTA, Petitioner-Appellant,
v.
Dr. George J. BETO, Director, Texas Department of
Corrections, and the Stateof Texas, Respondents-Appellees.
 Nos. 27882, 28259.
 United States Court of Appeals, Fifth Circuit.
 May 6, 1970, Rehearing Denied and Rehearing En Banc Denied
in No. 27882 June29, 1970.
 
 John J. Browne, Clyde W. Woody, and Marian S. Rosen, Houston, Tex., for petitioner-appellant.
 Crawford C. Martin, Atty. Gen. of Texas, Jo Betsy Lewallen, Asst. Atty. Gen., Lonny F. Zwiener, Asst. Atty. Gen., Austin, Tex., for respondent-appellee.
 Before THORNBERRY, DYER, and CLARK, Circuit Judges.
 THORNBERRY, Circuit Judge:
 
 
 1
 These two habeas corpus cases, which we have consolidated for opinion purposes, concern the validity of search warrants under two controlling Supreme Court decisions, Aguilar v. Texas[1] and Spinelli v. United States.[2] In each of the cases at bar, the district court denied the petition for habeas corpus. We affirm the denial of relief in both cases. It should be noted, however, that the reasoning we follow differs from that of the district courts. The district courts held the warrants invalid, justifying both searches on the ground that they were incident to arrests, while we rest our decision solely upon the validity of the warrants. We reach this decision because the preference accorded searches under warrants militates against the restrictive interpretation here imposed by the district courts upon the supporting affidavits. Before discussing the issues, we first proceed to set out the essential facts of both cases.
 
 I. FACTS
 A. No. 27882: Acosta v. Beto
 
 2
 The case against appellant Joe Givas Acosta began when the Houston police got a tip from an unnamed informer to the effect that appellant was keeping narcotics at his house. Police officers Chavez and Moore set up a surveillance of the house, and in the course of one day's observation they saw several persons, whom they personally knew to be users of narcotics, enter the house, remain for about five minutes each, and then leave. At this point, the officers procured a search warrant covering the house and grounds. The affidavit had as its operative elements the following three allegations: (1) The fact that the unnamed informer had told the police that appellant possessed narcotics at his house; (2) the assertion that the informer was a credible person who had given information concerning narcotics to the affiants on about four prior occasions, with the information proving to be true each time; and (3) a brief description of the surveillance and its results as the affiant officers themselves observed them.[3]
 
 
 3
 When the officers went to execute the warrant, they found appellant, with his wife and minor son, driving away from his residence. They immediately arrested him. Taking him back to the house, the officers made a thorough search of both the house and its grounds. After about three hours of work, the officers found a glass jar containing heroin buried in the back yard. On the basis of this and other evidence, appellant was convicted of possession of heroin and sentenced, as a second offender, to thirty years in prison. The police never furnished appellant with the identity of the informer upon whose tip the warrant was based.
 
 
 4
 After having exhausted his remedies in the state courts, appellant petitioned the district court below for a writ of habeas corpus. In the course of a careful and excellent opinion, which has been of great help to this Court notwithstanding our disagreement with its reasoning, the district court denied the petition.[4] The court held that the warrant was invalid because it failed to meet the standards set by the Spinelli case. The court went on, however, to hold that information the officers had about appellant but did not allege in the affidavit could be combined with circumstances of appellant's apprehension to justify the arrest without a warrant. One factor in the court's decision was the fact that appellant was driving away from his house at the time he was apprehended, which the court viewed as an indication that appellant might have been escaping. Having thus found the arrest valid, the court took the further step of approving the search of appellant's house as a search incident to the arrest. The court recognized that its reasoning conflicted somewhat with the principle that searches under a warrant are preferred. It concluded, however, that because of the procedure for determining probable cause, 'the paradox is this * * *. From a practical standpoint, it would seem that a warrantless search would stand a better chance of being upheld than a search under a warrant.'
 
 B. No. 28259: Gonzales v. Beto
 
 5
 The procurement of the warrant in this case presents facts identical to those of Acosta v. Beto. Houston police officers Garcia and Tissue received a tip from an unnamed informer, set up surveillance of appellant Adiel F. Gonzales' house, observed several persons whom they knew to be users of narcotics enter the house for about five minutes each, and swore out an affidavit closely similar to that described above in Acosta's case. In fact, the affidavit is sworn out on a form provided by the Houston Police Department, and consequently it is identical in language to that used against Acosta except as to particulars.[5]
 
 
 6
 When the officers went to execute the warrant, they knocked on appellant's door and apparently alerted the occupants as to the purpose of their mission. They heard and saw the occupants running about in the house. As they entered, they heard appellant shout to another occupant, Shirley Wells, that she should 'grab the heroin.' The officers entered the kitchen, where they found appellant standing at the sink cleaning meat and Shirley Wells attempting to exit through the back door. One of the officers asked Shirley Wells whether she had anything and she handed over a small package containing heroin. Appellant, before any questions were addressed to him and before the police warned him of his rights, stated that the package was his and that no one else in the house knew what was in it.[6] On the basis of this evidence, appellant was convicted of possession of heroin and sentenced, as a third-time offender, to life imprisonment.
 
 
 7
 On appellant's petition for a writ of habeas corpus, the district court followed the reasoning of the Acosta decision and denied relief. As in Acosta, the court held that the warrant was invalid. It held further, however, that the conduct of the occupants of the house after the officers' knock, particularly their running and appellant's direction to Shirley Wells to grab the heroin, coalesced with the officers' prior knowledge to create probable cause for an arrest without a warrant. The court went on to conclude that the heroin was seized as a result of a legal search incident to the arrest.
 
 II. THE BASIS FOR WARRANT REQUIREMENTS
 
 8
 The searches involved in these cases must be measured against the fourth amendment, which prohibits 'unreasonable' searches and seizures and states that 'No Warrants shall issue, except upon probable cause, supported by Oath or affirmation * * *.' The question whether warrants are required for various types of searches incident to arrests has produced some of the most confusing decisions in the history of constitutional law.[7] It remains a difficult question to this day. The district courts in these cases resolved the question by viewing liberally the power of police to search without warrants. In Acosta, for example, the common, everyday act of driving away from one's house accompanied by one's family became an element of probable cause for a warrantless search.[8] In Gonzales, the suspects' panicky actions after the knock on the door was used to justify the search.[9] In both cases, facts within the knowledge of the police from the beginning but not alleged in the affidavits were used as major determinants of probable cause.[10] We conclude that the district courts did not accord enough weight to the preference that should be given searches under warrants.[11] As a concomitant to this error, the district courts gave an overly restrictive construction to the standards by which warrants are judged.
 
 
 9
 The requirement of a search warrant is unquestionably a strong bulwark against the evils at which the fourth amendment is directed. Although the paradox observed by the district courts-- greater difficulty in justifying searches under warrants-- unfortunately exists in many cases, we are inclined to attach great weight to the preference. The fourth amendment was written in terms of 'reasonableness' so that it would bring about its expressed purposes not as a theoretical but as a practical matter. As Mr. Justice Clark observed in Mapp v. Ohio,[12] 'There is no war between the Constitution and common sense.' We should not adopt a construction of the fourth amendment that will, as a practical matter, make it more difficult for police to procure a warrant when there is time to do so than to justify their search on the ground that it accompanies an arrest.
 
 
 10
 Thus the preference for warrants necessitates, as a practical matter, both careful scrutiny of warrantless arrest searches and a reasonable construction of warrant affidavits if the paradox observed by the district court is to be kept at a minimum. The decisions of the Supreme Court, of course, establish minimal standards for probable cause that we must adhere to. The standards, as the courts below recognized, are partly technical, but they are open-ended in that if the technical requirements are not entirely met the warrant may still be valid if when viewed as a whole it measures up to certain benchmarks of probable cause. We next proceed to consider the standards of probable cause against the facts of this case.
 
 
 11
 III. MINIMUM STANDARDS FOR SEARCH WARRANT AFFIDAVITS
 
 
 12
 A search warrant may be based upon any one of three types of information. First, it may be based entirely upon hearsay-- that is, upon an informer's tip. Secondly, it may be based entirely upon facts within the personal knowledge of the affiant. Thirdly, it may be based upon a combination of hearsay and assertions within the affiant's personal knowledge. Whatever its basis, however, the warrant must contain allegations that go beyond the affiant's mere suspicion or his repetition of another's mere suspicion. The warrant is a check upon the officer's zeal in 'the often competitive enterprise of ferreting out crime,'[13] and hence it must be tested against objective facts presented to a detached magistrate. This requirement of objective assertions, assertions explaining why the magistrate should believe the elements offered to show probable cause, is perhaps the most difficult part of the warrant standards to meet, especially when an informer's tip is a major element of probable cause. It is with this requirement that the recent Supreme Court decisions in Aguilar v. Texas and Spinelli v. United States are concerned.
 
 
 13
 The basic case is Aguilar, which concerned a search warrant based entirely upon an informer's tip. The Court held the warrant invalid, but not because the tip itself was defective as a basis for probable cause. The warrant was invalid because the affiant had not stated the reasons why he had credited the hearsay tip. The Supreme Court established two requirements of objective fact that must be affirmatively expressed in a warrant based entirely upon an informer's tip: (1) The affiant must state the reason why he believed that what the informer said was true, and (2) he must give the source of the informer's information as it was expressed to him. The first requirement could be met, for example, by allegations to the effect that the informer had proven reliable on prior occasions. The second could be met by repeating the informer's representation that he observed the intended object of the search, or by a showing that he otherwise based his information reliably.
 
 
 14
 Aguilar addressed itself only to the case in which a warrant was based entirely upon an informer's tip, and did not establish standards for those based in whole or in part upon personal knowledge of the affiant himself. The warrants at issue here are of the latter type and hence are not controlled by Aguilar's technical requirements. The subsequent Spinelli case answered some of the difficult problems raised by warrants of this kind. Spinelli concerned a search for evidence of gambling operations. The warrant contained the following relevant elements: (1) An informer's tip to the effect that Spinelli was using two specified telephone numbers for gambling operations, (2) police observations of Spinelli entering a certain apartment, (3) telephone records showing that the apartment Spinelli entered contained two telephones with the numbers specified by the informer, and (4) the bald assertion that law enforcement agents knew Spinelli to be a 'bookmaker, an associate of bookmakers, a gambler, and an associate of gamblers.' At the outset, the Court distinguished the case from Aguilar as presenting a stronger basis for the search warrant. Corroborating facts from police observation, the Court held, could make a hearsay affidavit valid even if it did not meet both tests established in Aguilar. The question a magistrate reviewing such an affidavit must ask, said the Court, is as follows: 'Can it fairly be said that the tip, even when certain parts of it have been corroborated by independent sources, is as trustworthy as a tip which would pass Aguilar's tests without independent corroboration?' In evaluating the corroborating facts, the Court pointed out that the only objective corroboration offered to buttress the informer's tip was the officers' observation of Spinelli entering the apartment that had the two telephones the informer had specified. Possession of two telephones, as the Court indicated, is not suspicious conduct at all, much less an element of probable cause for a search.
 
 
 15
 In evaluating the corroborating facts the Spinelli Court also referred to 'benchmark' cases 'that give content to the notion of probable cause.' These cases, along with Aguilar, are to be considered by the magistrate in answering the question Spinelli puts to him. Principally, the Court cited Draper v. United States,[14] in which independent police observation coincided with an informer's detailed description of a suspect and thus furnished some degree of objective proof of the informer's veracity. The Spinelli Court also cited United States v. Ventresca,[15] a moonshine case in which Treasury agents observed the suspect's repeated receipt of large quantities of sugar, smelled the odor of fermenting mash, and heard sounds of a pump in the suspect's house, and McCray v. Illinois,[16] in which an informer's tip as to the location of a suspect allegedly possessing narcotics was corroborated by police observation while the suspect engaged in suspicious activities. These 'benchmark' cases, to us, seem to mean that an informer's tip can be significantly buttressed if either (1) independent observations by the affiant corroborate sufficient details of the tip (whether suspicious or not) to negate the possibility that the informer 'fabricat(ed) his report out of the whole cloth' (the Draper situation), or (2) independent observations by the affiant contribute to a showing of probable cause by revealing not merely normal patterns of activity but activity that reasonably arouses suspicion (the McCray situation). We consider the Spinelli case to mean that either of these buttressing observations may allow the magistrate to resolve the required comparison with Aguilar in favor of issuing the search warrant.[17]
 
 
 16
 The cases at bar, we think, contain independent buttressing observations sufficient to satisfy the requirements. There is first of all in each case the informer's tip, which admittedly would not be enough by itself. Also, in both affidavits one of the specific technical requirements of Aguilar is met, in that the affiants have stated that the informer has proved reliable on a specific number of past occasions when he gave tips concerning narcotics offenses. Finally, the results of the surveillances by the affiants are sufficient to give rise to a reasonable suspicion that the suspects were committing the crimes the informer said they were. Having known users of narcotics repeatedly enter one's house and leave after staying for approximately five minutes is a far more suspicious circumstance than Spinelli's entry into an apartment with two telephones in it. As appellants point out, some of the force is admittedly taken out of the corroboration in that it is partially based upon the officer's assertion, without more, that the visitors were known to them as narcotics users. Be that as it may, the link with the suspects was based upon observation of suspicious conduct-- the five-minute visits-- rather than upon mere association and reputation as in Spinelli.[18] Finally, it should be remembered that we need not find sufficiently strong suspicion to create probable cause in these corroborating facts taken alone. The affidavits also contain the informer's tips and establish some basis for thinking the tips reliable. If police are allowed to search houses only after having sworn out affidavits such as the ones presented here, they will be significantly deterred from invading the 'right of the people to be secure in their persons, houses, papers, and effects' that the fourth amendment protects.
 
 
 17
 It is not the intent of the Aguilar and Spinelli decisions to make it difficult for a policeman to get a warrant if in fact he has probable cause. On the contrary, the cases contemplate that an affiant with some basic understanding of the law can get a warrant if he has probable cause and simply sits down and explains why. Accordingly, we have evaluated the warrants in this case not under technical requirements but against the benchmark cases that the Supreme Court has indicated we should use. In doing so, we have construed the preference for searches under warrants to imply that the benchmark cases are concerned with practical inferences that may be taken from the facts as a whole.[19]
 
 IV. OTHER ISSUES
 
 18
 We now turn to other, unrelated issues presented by appellants in this case. We find all of them to be without merit. Here we discuss the more significant of the questions thus presented.
 
 
 19
 Appellant Acosta has raised the point that the State did not appeal the district court's holding that the warrant was invalid. From this, appellant argues that the State is precluded from relying on the warrant in this case. The argument is fallacious because appeal can be taken only from a judgment or a portion of judgment; it cannot be taken from a mere piece of the court's reasoning. The district court denied in full the relief requested by appellant. Since this was so, the judgment was fully consistent with the request of the State, and there was nothing the State could appeal even if it wished to.
 
 
 20
 Appellant Gonzales attacks the admission into evidence of his statement to police officers before they administered to him the warnings required by Miranda v. Arizona, 1966, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. The statement was made immediately after appellant had been taken into custody and the heroin had been taken from Shirley Wells, before the officers had time to direct any statements or questions toward appellant. It is true, as appellant asserts, that he was under arrest and in police custody, and any statements taken from him as a result of police interrogation would be inadmissible. See Orozco v. Texas, 1968, 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311. But the statement was spontaneous. It resulted not from police interrogation but from appellant's own desire to make his interpretation of the situation known, for the apparent purpose of exonerating Shirley Wells. Accordingly, the principles that compelled exclusion in Miranda are inapplicable to this case and the statement was properly admitted.
 
 
 21
 Appellant Acosta argues that the state trial court denied him the hearing required by Jackson v. Denno, 1964, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, on the voluntariness of statements made by him to the police. The argument is based upon the fact that the prosecution inserted implications relating to the veracity of the confession, implications that are irrelevant under Jackson. The argument is without merit because the hearing was held before the trial court outside the presence of the jury, and it is clear that the trial court held the confession voluntary under proper standards. Indeed, the court attempted to steer the prosecution away from irrelevant considerations to the real issue of voluntariness.
 
 
 22
 Both appellants argue that the failure of the trial court to require disclosure of the identity of the informers upon whose tips the warrants were issued is constitutional error. We need not consider the issue in the contest of searches without warrants, because we have valid warrants in this case. In this situation, it is clear that the identity of informers need not be disclosed. McCray v. Illinois, 1967, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62. There are compelling reasons for keeping the informer unidentified.[20] It has been observed that identification of the informer may render him useless. Even more persuasive to us is the possibility that it may render him dead.[21] The standards of probable cause furnish an efficient safeguard without disclosure of the informer's identity. Furthermore, appellants were able to level a strong attack on the veracity of the allegations of the affidavit by examining the affiant police officers, and this examination furnished fairly convincing proof that the officers did not simply make up their stories.
 
 
 23
 Finally, appellants have attacked the use by the Houston police of form affidavits in which the affiant merely fills in the blanks. Appellants argue, and there is certainly some truth to the argument, that these forms might be subject to abuse.[22] When this issue is raised, a court must scrutinize it carefully. No abuse, however, is shown in this case. The officers testified as to various facts concerning the informer.[23] They testified as to their surveillance and identified the users of narcotics whom they had observed.[24]
 
 
 24
 This being the case, it is clear that the use of form affidavits has not been used to dilute the standard of probable cause by fictional allegations. With warrant requirements as hazy as they are, it is eminently sensible for the police department to rely upon what amounts to a check list of facts that must be alleged rather than upon the discretion of individual officers. Furthermore, we suspect that the real effect of the forms is actually to make it less likely that unreasonable searches will be undertaken. Counsel for the State informed us at oral argument that 'Unless we (i.e., police officers) have the information in these affidavits, we don't get a warrant.' In the context of evidence that does not show that the forms were abused, appellants' attacks on them amount to a complaint that the fourth amendment is working as it should.
 
 
 25
 Affirmed.
 
 
 26
 ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC
 
 PER CURIAM:
 
 27
 The Petition for Rehearing is DENIED and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.
 
 
 
 [1]
 1963, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723
 
 
 [2]
 1969, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637
 
 
 [3]
 The affidavit reads as follows:
 'On the 14th day of May, 1965, affiants received reliable information from a credible person that heroin was being possessed by Joe Givas Acosta, at 7515 Force Street, Houston, Harris County, Texas. Although I do not desire to name this person, on about four prior occasions he has given information to me concerning narcotics being possessed by certain individuals, and on every occasion his information has proven to be true. Based upon the information he gave to me, affiants on the morning of the 14th day of May, 1965, set up a surveillance of the house located at 7515 Force Street, and from approximately 7:00 a.m. to 10:00 a.m. of that day we observed several persons whom we know to be users of narcotics, enter the house, remain for approximately five minutes each and then leave.'
 
 
 [4]
 Acosta v. Beto, S.D.Tex.1969, 297 F.Supp. 89
 
 
 [5]
 The only differences are in the names of the accused persons, the dates and times of surveillance, the description of the premises, and similar matters
 
 
 [6]
 The admittance of this statement by appellant into evidence of course raises an issue separate from the search. We discuss the issue at section IV below
 
 
 [7]
 Compare, e.g., United States v. Rabinowitz, 1950, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653, with Preston v. United States, 1964, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777, and Cooper v. California, 1966, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730, and Chimel v. California, 1969, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685. See Note, Scope Limitations for Searches Incident to Arrest, 78 Yale L.J. 433 (1969)
 
 
 [8]
 Probable cause cannot be found from activities that are not suspicious or unusual. The accused's act of driving from his home should be compared with the facts treated in the following language of Spinelli:
 The first two items (offered to show probable cause) reflect only innocent-seeming activity and data. Spinelli's travels to and from the apartment building and his entry into a particular apartment on one occasion could hardly be taken as bespeaking gambling activity; and there is surely nothing unusual about an apartment containing two separate telephones. Many a householder indulges himself in this petty luxury.
 393 U.S. at 414, 89 S.Ct. at 588.
 In addition, it is to be noted that the officers removed appellant Acosta from his car and took him into the house in order to conduct an extensive search of the house. This search was illegal under Shipley v. California, 1969, 395 U.S. 818, 89 S.Ct. 2053, 23 L.Ed.2d 732 (applying pre-Chimel law).
 
 
 [9]
 This holding should be compared with the dicussion the Supreme Court afforded similar facts in Wong Sun v. United States:
 A contrary holding here would mean that a vague suspicion could be transformed into probable cause for arrest by reason of ambiguous conduct which the arresting officers themselves have provoked. Cf. Henry v. United States, 361 U.S. 98, 104, 80 S.Ct. 168, 172, 4 L.Ed.2d 134. That result would have been the same essential vice as a proposition we have consistently rejected-- that a search unlawful at its inception may be validated by what it turns up. Byars v. United States, 273 U.S. 28, 47 S.Ct. 248, 71 L.Ed. 520; United States v. Di Re, 332 U.S. 581, 595, 68 S.Ct. 222, 228, 92 L.Ed. 210.
 1963, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441.
 
 
 [10]
 We do not hold that facts withheld from a warrant application that later proves insufficient can never be combined with circumstances at the time of arrest to create probable cause. However, it is law too clear to require citation that a warrant may not be bolstered by such facts. It would therefore be somewhat anomalous to allow free use of them to justify warrantless searches when the facts withheld are of major significance to a finding of probable cause and when there is ample time to secure a warrant
 
 
 [11]
 By contrast to the district courts' decisions here, the Supreme Court's decision in Chimel appears to limit warrantless searches to 'emergency' justifications, 395 U.S. at 761, 763-764, 89 S.Ct. at 2039-2041. See also McDonald v. United States, 1948, 335 U.S. 451, 455-456, 69 S.Ct. 191, 193, 93 L.Ed. 153; cf. Chevigny, Police Abuses in Connection with the Law of Search and Seizure, 5 Crim.L.Bull. 3 (1969); Kitch, The Supreme Court's Code of Criminal Procedure: 1968-1969 Edition, 1969 Sup.Ct.Rev. 155, 158-159; Note, The Right of the People to Be Secure: The Developing Role of the Search Warrant, 42 N.Y.U.L.Rev. 1119 (1967); Note, Scope Limitations on Searches Incident to Arrest, 78 Yale L.J. 433 (1969)
 
 
 [12]
 1961, 367 U.S. 643, 657, 81 S.Ct. 1684, 1693, 6 L.Ed.2d 1081
 
 
 [13]
 Johnson v. United States, 1948, 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436
 
 
 [14]
 1959, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327
 
 
 [15]
 1965, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684
 
 
 [16]
 1967, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62
 
 
 [17]
 See Note, An Informer's Tip as Probable Cause for Search or Arrest, 54 Cornell L.Rev. 958 (1969); Note, The Supreme Court, 1968 Term, 83 Harv.L.Rev. 7, 177-181 (1969); cf. Comment, An Informer's Word as Probable Cause in the Federal Courts, 53 Calif.L.Rev. 840 (1965); Note, Testing the Factual Basis for a Search Warrant, 67 Colum.L.Rev. 1529 (1967). See also Kitch, The Supreme Court's Code of Criminal Procedure, 1968-1969 Edition, 1969 Sup.Ct.Rev. 155, 158-59
 
 
 [18]
 The importance of this distinction is indicated in Note, The Supreme Court, 1968 Term, 83 Harv.L.Rev. 7, 180 n. 11 (1969) and authorities therein cited
 
 
 [19]
 We are aware that the Spinelli Court stated that 'the 'totality of the circumstances' approach taken by the Court of Appeals paints with too broad a brush.' 393 U.S. at 415, 89 S.Ct. at 588. It appears, however, that the Court was condemning not the inspection of all facts alleged together with permissible inferences but rather the standard against which the Court of Appeals compared those facts. We have taken all permissible inferences from the affidavits and compared them against the benchmark cases. 'The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer * * *.' Aguilar v. Texas, 378 U.S. 108, 111, 84 S.Ct. 1509, 1512, 12 L.Ed.2d 723, citing Johnson v. United States, 1948, 333 U.S. 10, 13-14, 68 S.Ct. 367, 369, 92 L.Ed. 436
 
 
 [20]
 The reasons are critically reviewed in Quinn, McCray v. Illinois: Probable Cause and the Informer Privilege, 45 Denver L.J. 399 (1968). See also authorities cited note 17 supra
 
 
 [21]
 Thus, for example, in United States v. Flanagan, the warrant in issue did not name the informer, but his identity became known in the course of litigation. The State informed this Court in its brief that 'Smith (the informer) was later found the victim of a 'gangland' murder. (T. 55). The police should not be required to condemn men like Smith to death.' Brief for appellant (State of Texas) at 9, United States v. Flanagan, 5th Cir., 1970, 423 F.2d 745
 
 
 [22]
 Of course, all affidavits are subject to abuse. There is always the possibility that the affiant has committed perjury, the informer has lied or the 'confidentiality' of the informer has been used to mask the use of illegal means to obtain evidence. See Note, The Supreme Court, 1968 Term, 83 Harv.L.Rev. 7, 181 (1969); Kitch, The Court's Code of Criminal Procedure: 1968-1969 Edition, 1969 Sup.Ct.Rev. 155, 161. Form affidavits are slightly more suspect than others because they may provide encouragement for fictional allegations by their formal treatment of the elements of probable cause
 
 
 [23]
 Without naming the informer, the officers in the Acosta case, who were experienced narcotics agents, stated that they had known the informer for about one-and-a-half years. The testimony showed that the informer had seen the heroin at Acosta's house and had related this fact to the officers
 
 
 [24]
 The officers identified the visitors by name in their testimony. They also testified that narcotics charges were pending against these persons and that they knew of the charges at the time
 It should be emphasized that we do not consider this testimony as establishing any elements of probable cause to support the warrant. The testimony is relevant only as to the entirely separate question of the truth of the affiants' allegations.