**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Billy Cecil DOOLITTLE, William Augustus Sanders, Jr., Ernest Massod Union, Julian Wells Whited, Frank Joseph Masterana, Cliff Anderson, Darnice T. Malloway, and William E. Baxter, Defendants-Appellants.**

No. 72–3263.

United States Court of Appeals, Fifth Circuit.

Feb. 14, 1975.

Rehearing En Banc Granted April 7, 1975.

---

**1370**

Floyd M. Buford, Macon, Ga., for Union and Whited.

Oscar B. Goodman, Las Vegas, Nev., for Doolittle, Sanders and Masterana.

Louis Weiner, Jr., Las Vegas, Nev., Manley F. Brown, Macon, Ga., for Anderson.

Wesley R. Asinof, Atlanta, Ga., for Malloway and Baxter.

William J. Schloth, U. S. Atty., Charles T. Erion, Asst. U. S. Atty., Macon, Ga., for plaintiff-appellee.

Before THORNBERRY, AINSWORTH and RONEY, Circuit Judges.

RONEY, Circuit Judge:

All defendants were convicted in a non-jury trial for conspiracy to violate 18 U.S.C.A. §§ 1084 and 1952, which prohibit the use of interstate wire and telephone facilities to carry on illegal gambling operations. All defendants were similarly convicted of substantive violations of § 1952, and defendants Masterana and Doolittle were also convicted of substantive violations of § 1084. The convictions were obtained primarily by the use of conversations intercepted by a wiretap authorized by the district court under Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C.A. §§ 2510–2520, and the fruits of searches for which the wiretap provided probable cause. Recognizing that without this evidence the Government's case would be substantially weakened, if not destroyed, defendants mounted a multi-faceted assault on the wiretap in a motion to suppress the evidence in the district court. The district court denied the motion, and the convictions followed. The attack has been renewed in this Court, but like the district court, we find no infirmity warranting suppression of the evidence and affirm all convictions.

■ Defendants first attack the wiretap provisions of the Omnibus Crime Control Act as unconstitutional for violations of the First, Fourth, Fifth and Sixth Amendments. We have recently upheld this portion of the statute against a similar constitutional attack. United States v. Sklaroff, 506 F.2d 837 (5th Cir. 1975).

■ Next the defendants assert that various procedural irregularities in the authorization of the wiretap request within the Justice Department require that the evidence be suppressed. See 18 U.S.C.A. § 2515. The Supreme Court of the United States has ruled that irregularities of the kind asserted here do not render the communications "unlawfully intercepted" or the interception request "insufficient on its face." United States v. Chavez, 416 U.S. 562, 94 S.Ct. 1849, 40 L.Ed.2d 380 (1974); see 18 U.S.C.A. §§ 2518(10)(a)(i), 2518(10)(a)(ii). At the time this case was argued, the Supreme Court had not decided Chavez and appellants relied on the Ninth Circuit decision in that case. United States v. Chavez, 478 F.2d 512 (9th Cir. 1973). The Supreme Court modified that portion of the Ninth Circuit decision upon which the appellants relied. We find nothing in this case to warrant a different result

than that determined by the Supreme Court in *Chavez*. Considering the other information contained in the Interception Order Authorization, such as the location of the phones to be tapped, address of the Sportsman's Club, and its owner, we find the one incorrect digit in one of the four telephone numbers listed therein to be an immaterial variation from the actual, correct number for which the tap was requested of the district court. *Cf.* United States v. Chavez, *supra.*

■ The procedure of filing the affidavits of the Attorney General and his subordinates, as a method of proving the administrative history of the specific authorization in this case, is identical to that used in *Chavez*. There is no constitutional infirmity in the district court's refusal to require more of the Attorney General on this narrow issue of fact.

■ Appellants contend that the use of a "pen register," as in this case, is not specifically authorized by Title III and must, therefore, be considered rejected by Congress as an appropriate investigative tool. The Act does not prohibit the use of pen registers and we do not view its use in this case, based upon probable cause and with a separate authorization from the district court, as being constitutionally offensive. *See* United States v. Giordano, 416 U.S. 505, 553–554, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974) (Powell, joined by the Chief Justice, and Blackmun and Rehnquist, JJ., concurring in part and dissenting in part); United States v. Finn, 502 F.2d 938 (7th Cir. 1974); United States v. Brick, 502 F.2d 219, 223 (8th Cir. 1974); *cf.* United States v. Falcone, 364 F.Supp. 877 (D.N.J.1973), aff'd, 500 F.2d 1401 (3rd Cir. 1974).

■ Certain defendants assert that the Government lacked probable cause to believe that their conversations would be intercepted by the wiretap. They contend that this lack of probable cause should render the tap unlawful as to them. A similar argument has been rejected by the Supreme Court in United States v. Kahn, 415 U.S. 143, 94 S.Ct.

977, 39 L.Ed.2d 225 (1974). At oral argument, the appellants relied upon the Seventh Circuit decision in United States v. Kahn, 471 F.2d 191 (7th Cir. 1972). The reversal by the Supreme Court of the Seventh Circuit decision is dispositive of the issue as framed here. The statute does not require that there be probable cause as to all persons whose conversations are intercepted. *See* 18 U.S.C.A. § 2518(1)(b)(iv). Since the wiretap in this case was validly issued, the wiretap conversations of those individuals not known to be involved in criminal activity at the time of the court authorization may be used against them.

■ The wiretap authorization referred to "Billy Cecil Doolittle and others as yet unknown." Anderson and Baxter contend that the Government had reasonable cause to believe that their conversations would be intercepted. Relying on certain language in the Supreme Court's opinion in *Kahn,* they argue that, not being "unknown," they should have been named in the authorization. They contend that since they were not named, the wiretap order was illegal as to their conversations. The same argument could be made for Sanders. We reject this argument. The defendants neither allege nor demonstrate any prejudice to them in not being named in the authorization. The Government contends that its agents had personal knowledge, as opposed to information, to support probable cause as to illegal activity only of Doolittle, the co-owner of the Sportsman's Club, the establishment wherein the telephones were located and to which the telephone bills were sent. All defendants received an inventory of the intercepted conversations, were allowed to listen to the tapes and received transcripts of the conversations prior to use against them at trial, as if they had been named in the order. Most of the conversations of each defendant were with Doolittle, the person named in the order. There is no indication of bad faith or attempted subterfuge by the Government in its wiretap application. The application and affida-

vit delineated specifically the information expected to be gathered from the tap. We hold there was substantial compliance with the requirements of the Act, and that the failure to name other defendants does not render the evidence obtained as to them inadmissible under 18 U.S.C.A. § 2518(10)(a).

■ The last general attack by all defendants is that the wiretaps exceeded the scope of the interceptions authorized by the court order. The testimony by the monitoring agent at the suppression hearing reveals that they listened to each call only long enough to determine whether in their judgment it could be one dealing with gambling as authorized to be intercepted by the district court. Only those calls which the agents reasonably believed were related to gambling were recorded on tape. There is no question that some irrelevant and personal portions of gambling conversations were intercepted or that certain nonpertinent conversations were intercepted. But this is inherent in the type of interception authorized by Title III, and we do not view the simple inclusion of such conversations, without more, as vitiating an otherwise valid wiretap. The procedure testified to by the agents appears a reasonable method for complying with the order of the district court, in accord with the statutory mandate that the interception be conducted in such a way as to minimize the interception of communications not otherwise subject to interception under Title III. United States v. Cox, 462 F.2d 1293 (8th Cir. 1972), cert. denied, 417 U.S. 918, 94 S.Ct. 2623, 41 L.Ed.2d 223 (1974).

■ The district court specifically found that defendants Malloway and Baxter lacked actual knowledge of the use of interstate facilities in the gambling operation. This lack of specific knowledge is legally irrelevant. The words of § 1952 do not require specific knowledge of the use of interstate facilities and we agree with the decisions in other Circuits that such knowledge is not a prerequisite to criminal liability thereunder. *See, e. g.,* United States v. Ro-

selli, 432 F.2d 879 (9th Cir. 1970), cert. denied, 401 U.S. 924, 91 S.Ct. 883, 27 L.Ed.2d 828 (1971); United States v. Hanon, 428 F.2d 101 (8th Cir. 1970), cert. denied, 402 U.S. 952, 91 S.Ct. 1608, 29 L.Ed.2d 122 (1971); United States v. Miller, 379 F.2d 483 (7th Cir.), cert. denied, 389 U.S. 930, 88 S.Ct. 291, 19 L.Ed.2d 281 (1967).

■ Anderson individually challenges the district court's handling of his evidentiary objection to certain of the intercepted conversations as hearsay. The trial court's rulings on this matter shows a clear understanding of the law on the exception to the hearsay rule which applies to statements made by co-conspirators in furtherance of the conspiracy. *See, e. g.,* United States v. Register, 496 F.2d 1072, 1078–1079 (5th Cir. 1974); United States v. Williamson, 482 F.2d 508, 513 (5th Cir. 1973). An examination of the record shows sufficient independent evidence of the existence of a conspiracy to which Anderson was a party to warrant the introduction of the hearsay conversations against him.

Affirmed.

THORNBERRY, Circuit Judge (concurring in part and dissenting in part):

I concur in the decision affirming the convictions of Doolittle, Malloway, and Masterana. With regard to appellants Anderson, Baxter, and Sanders, however, I would reverse; hence I respectfully dissent from so much of the majority opinion as affirms their convictions.

I do so not without reluctance, for the majority admirably attempts to demonstrate that the latter defendants were not prejudiced by the procedure under which their intercepted telephone communications were used against them at trial. That is while these defendants enjoyed along with every member of the public a Congressionally-recognized interest in individual privacy, their interest must be balanced against the government's interest in enforcing laws relating to the crimes enumerated in 18 U.S.C. § 2516(1)(a)–(g). Under the circumstances of this case, these defendants

having obtained inventories and access to the evidence, the majority necessarily reasons that the governmental interest must prevail.

If the choice were ours to make, I probably would not quarrel with the majority's conclusions that "there was substantial compliance with the requirements of [Title III]," and, consequently, no requirement of suppression as to Anderson, Baxter, and Sanders due to the failure of the government and the district court to name them in either the wiretap application or the resulting order. The controlling issue of statutory construction, however—an issue with which the majority does not come to grips—has already been decided rather clearly by the Supreme Court. It is in the application of the Court's rule of statutory construction[1] to the facts that I find myself in basic disagreement with the majority.

In United States v. Kahn, 415 U.S. 143, 155, 94 S.Ct. 977, 984, 39 L.Ed.2d 225, 237 (1974), the square holding is as follows:

We conclude, therefore, that Title III requires the naming of a person in the application or interception order only when the law enforcement authorities have probable cause to believe that the individual is "committing the offense" for which the wiretap is sought. Since it is undisputed that the Government had no reason to suspect Minnie Kahn of complicity in the gambling business before the wire interceptions here began, it follows that under the statute she was among the class of persons "as yet unknown" covered by Judge Campbell's order.

Having so held, the Court proceeded to reverse the Seventh Circuit, which had ordered Minnie Kahn's gambling-related telephone conversations suppressed, al-

beit for reasons more onerous to the government than the test announced by the Supreme Court.

Perhaps apprehensive about its quick dismissal of *Kahn* in this case, the majority somehow divines a contention by the government that probable cause to suspect participation "in the gambling business" existed only as to Doolittle at the time when wiretap authorization was sought. The majority suggests that this absence of probable cause as to the "others as yet unknown" may have resulted from government possession of mere hearsay information, rather than personal observation by investigating agents, concerning the behavior of these "others." Such a dichotomy, if seriously advanced, could indeed effect a major reformulation of the law of probable cause. *See* Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); Draper v. United States, 358 U.S. 307, 311, 79 S.Ct. 329, 332, 3 L.Ed.2d 327, 331 (1959); Gonzales v. Beto, 5th Cir. 1970, 425 F.2d 963, 968–970, cert. denied, 400 U.S. 928, 91 S.Ct. 194, 27 L.Ed.2d 189 (1970). Nor do I understand the majority to suggest that "probable cause" as to a given individual or telephone number connotes a more demanding standard when wiretaps are used by contrast to other types of searches. Again such a suggestion would, in my view, be erroneous. *See* United States v. Falcone, 3rd Cir. 1974, 505 F.2d 478, 481; United States v. Finn, 7th Cir. 1974, 502 F.2d 938, 941. The question with which I shall attempt to deal, then, is whether, at the time when wiretap authorization was sought, the government had probable cause to suspect that Anderson, Baxter, and Sanders were conspiring with or assisting Doolittle in illegal gambling involving the use of the telephone at the Sportsman's Club. For reference, repro-

1. The pertinent provisions of 18 U.S.C. § 2518 are:

(1)(b)(iv)—"Each application shall include the following information: . . . the identity of the person, if known, committing the offense and whose communications are to be intercepted. . . ."

(4)(a)—"Each order authorizing or approving the interception of any wire or oral communication shall specify—the identity of the person, if known, whose communications are to be intercepted . . . ."

duced in the margin[2] are the government's wiretap application and supporting affidavit of Special Agent Gary W. Hart, insofar as these materials are illuminative of the question at hand.

2. APPLICATION
(Number and Title Omitted)

Charles T. Erion, an Assistant United States Attorney, Middle District of Georgia, being duly sworn states:

This sworn application is submitted in support of an order authorizing the interception of wire communications. This application has been submitted only after lengthy discussion concerning the necessity for such an application with various officials of the Organized Crime and Racketeering Section, United States Department of Justice, Washington, D. C., together with Agents of the Federal Bureau of Investigation.

1. He is an "investigative or law enforcement officer—of the United States" within the meaning of Section 2510(7) of Title 18, United States Code, that is—he is an attorney authorized by law to prosecute or participate in the prosecution of offenses enumerated in Section 2516 of Title 18, United States Code.

2. Pursuant to the powers conferred on him by Section 2516 of Title 18, United States Code, the Attorney General of the United States, the Honorable John N. Mitchell, has specially designated the Assistant Attorney General for the Criminal Division of the United States Department of Justice, the Honorable Will Wilson, to authorize affiant to make this application for an order authorizing the interception of wire communications. The letter of authorization signed by the Assistant Attorney General is attached to this application as Exhibit A.

[516] 3. This application seeks authorization to intercept wire communications of Billy Cecil Doolittle and others as yet unknown concerning offenses enumerated in Section 2516 of Title 18, United States Code, that is—offenses involving the transmission, by means of an interstate wire facility, of gambling and wagering information by a person engaged in the business of gambling, in violation of Title 18, United States Code, Section 1084, and the use of interstate telephone communication facilities for the transmission of betting information in aid of a racketeering enterprise (gambling), in violation of Section 1952 of Title 18, United States Code, and a conspiracy to commit such offenses in violation of Section 371 of Title 18, United States Code, which have been committed and are being committed by Billy Cecil Doolittle and others as yet unknown.

4. He has discussed all the circumstances of the above offenses with Special Agent

Among the features of these materials which convince me that law enforcement officers had probable cause as to Anderson, Baxter, and Sanders are the following: (a) The basis of the application was

Gary W. Hart of the Macon, Georgia office of the Federal Bureau of Investigation who has directed and conducted the investigation herein, and has examined the affidavit of Special Agent, Hart (attached to this application as Exhibit B and incorporated by reference herein) which alleges the facts therein in order to show that:

(a) there is probable cause to believe that Billy Cecil Doolittle and others as yet unknown have committed and are committing offenses involving the transmission, by means of an interstate wire facility, of gambling and wagering information by a person engaged in the business of gambling, in violation of Title 18, United States Code, Section 1084, and the use of interstate [517] telephone communication facilities for the transmission of betting information in aid of a racketeering enterprise (gambling), in violation of Section 1952 of Title 18, United States Code, and are conspiring to commit such offenses in violation of Section 371 of Title 18, United States Code. (b) there is probable cause to believe that particular wire communications of Billy Cecil Doolittle and others as yet unknown concerning these offenses will be obtained through the interception, authorization for which is herewith applied for. In particular, these wire communications will concern the interstate transmission of gambling information relating to the outcome of professional baseball games and the dissemination of such information to persons engaged in the unlawful business of gambling, and the participants in the commission of said offenses.

(c) normal investigative procedures reasonably appear to be unlikely to succeed and are too dangerous to be used.

(d) there is probable cause to believe that the telephones listed to the Sportsman's Club located in the premises of the Sportsman's Club, 222 Third Street, Macon, Georgia, and carrying telephone numbers 912–746–9110, 912–745–2843, 912–745–2844, and 912–745–2845 have been used and are being used by Billy Cecil Doolittle and others as yet unknown [518] in connection with the commission of the above-described offenses.

5. No previous application has been made to any Judge for authorization to intercept or for approval of interception of wire or oral communications involving any of the same persons, facilities, or places specified herein.

WHEREFORE, your affiant believes that probable cause exists to believe that Billy Cecil Doolittle and others as yet unknown are engaged in the commission of offenses involving the transmission of gambling and wagering information by means of an interstate wire facility, by a person engaged in the business of gambling and the use of interstate telephone communication facilities for the transmission of betting information in aid of a racketeering enterprise (gambling), and a conspiracy to do so; that Billy Cecil Doolittle and others as yet unknown have used, and are using the telephone listed to the Sportsman's Club, located at 222 Third Street, Macon, Georgia, and bearing numbers 912–746–9110, 912–745–2843, 912–745–2844, and 912–745–2845, in connection with the commission of the above-described offenses; that communications of Billy Cecil Doolittle and others as yet unknown concerning these offenses will be intercepted to and from the above-described telephone; and that normal investigative procedures appear unlikely to succeed and are too dangerous to be used.

On the basis of the allegations contained in this application and on the basis of the affidavit of Special Agent Hart, which is attached hereto and made a part hereof, affiant requests this court to issue an order, pursuant to the power conferred on it by Section 2518 of Title 18, United States Code, authorizing the Federal Bureau of Investigation of the United States Department of Justice to intercept wire communications to and from the above-described telephones until [519] communications are intercepted which reveal the manner in which Billy Cecil Doolittle and others as yet unknown participate in the illegal use of interstate telephone facilities for the transmission of betting information in aid of a racketeering enterprise (gambling), and which reveal the identities of his confederates, their places of operation, and the nature of the conspiracy involved therein, or for a period of fifteen (15) days from the date of that order, whichever is earlier.

/s/ CHARLES T. ERION
CHARLES T. ERION
Assistant United States
Attorney
Middle District of Georgia

Subscribed and sworn to before me this 21 day of August, 1970.

/s/ W. A. BOOTLE
UNITED STATES
DISTRICT JUDGE

AFFIDAVIT OF GARY W. HART

Gary W. Hart, Special Agent, Federal Bureau of Investigation, Macon, Georgia, being duly sworn, states:

1. I am an "investigative or law enforcement officer of the United States" within the meaning of Section 2510(7) of Title 18, United States Code—that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code.

2. I have conducted an investigation of the offenses of Billy Cecil Doolittle and, as a result of my personal participation in that investigation and of reports made to me by other agents, I am familiar with all the circumstances of the offenses.

3. A confidential informant who has admitted personal participation in gambling activities, has stated that Doolittle operates a bookmaking operation in the Sportsman's Club, located at 222 Third Street, Macon, Georgia. Doolittle is assisted in his bookmaking operation by Will Sanders who is a full partner. Doolittle obtains the "line" for professional baseball games from an unknown individual by placing a call from a pay telephone booth located in the poolroom of the Sportsman's Club at approximately noon each day, and Doolittle and Sanders thereafter disseminate the "line," accept wagers on professional baseball games, and "lay off" bets through use of several telephones, one of which is numbered 745–2844, located in the "members only" room of the Sportsman's Club which is adjacent to the pool room. Among individuals contacted by Doolittle and his associates in this manner are Cliff Anderson of Columbus, Georgia, and Billy Baxter of Augusta, Georgia.

I have established through independent investigation that this informant has had the opportunity to obtain first-hand knowledge of the activities the informant has described. This informant has been contacted by Special Agents of the Federal Bureau of Investigation [521] on several occasions since January 1970 and on four occasions the informant has furnished information which has been determined to be accurate by independent investigation. On a date during the week beginning on August 2, 1970, this informant stated that within five (5) days prior to that date through personal observation of Doolittle's activities in the Sportsman's Club, the informant determined that Doolittle is currently operating as described in the preceding paragraph. This informant further stated that through first-hand knowledge the informant knows that Anderson and Baxter are engaged in accepting wagers on the outcome of professional baseball games as of a date during the week beginning on August 2, 1970.

4. A second confidential informant who has admitted personal participation in gambling activities has also stated that Doolittle operates a bookmaking operation in the Sportsman's Club located at 222 Third Street, Macon, Georgia, in a room off the pool hall area of the building. Further, informant

Hart's affidavit. Repeatedly Hart explicitly refers to a telephone wagering operation conducted over the Sportsman's Club telephone by Doolittle, Anderson, Baxter, and Sanders. (b) Hart avers that these activities were reported to him by confidential informants, alleged upon Hart's oath to have made declarations against penal interest as indicia of reliability, one of whom is further alleged to have given reliable information on twenty-two prior occasions. (c) The information is quite specific with respect to the players, their roles, certain wagered athletic contests, and the physical setting. (d) Hart avers that this specificity is the product of personal knowledge on the part of the informants, whose personal knowledge Hart swears he has verified through "independent investigation." Without belaboring the point, I simply confess my bemusement that if the Hart affidavit did not provide probable cause as to Anderson, Baxter, and Sanders, I do not

know what would. *See* Gonzales v. Beto, *supra*, 425 F.2d at 968–969; *see also* Polanco v. Estelle, 5th Cir. 1975, 507 F.2d 81 ("in judging probable cause magistrates are not to be confined by restrictions on their use of common sense"); United States v. James, 9th Cir. 1974, 494 F.2d 1007; United States v. McHale, 7th Cir. 1974, 495 F.2d 15. Yet, for reasons not entirely apparent to this court, the government saw to it that neither the application nor the order made reference to any of these three defendants.[3]

The government's own statements shed additional light on the issue. When this appeal was briefed, the Supreme Court had not yet decided *Kahn*. At that time the government's position was that the term "person, if known," as used in § 2518(1)(b)(iv) and 4(a), meant only the "subject" of the interception, whom the government contended was Doolittle. Not anticipating that the Supreme Court would choose a middle ground between its argument and the

states that during the 1970 professional baseball season, Doolittle, assisted by Will Sanders who is a partner, has utilized telephones, one of which is numbered 745–2844, located in this room to facilitate the placing and acceptance of wagers based upon the outcome of professional baseball games. Doolittle is associated with Cliff Anderson of Columbus, Georgia, and Billy Baxter of Augusta, Georgia, and he participates with these individuals, and others unknown, in the placing and accepting of wagers based upon the outcome of professional baseball games. Doolittle is associated with Cliff Anderson games by placing a call from a pay telephone booth located in the Sportsman's Club at approximately noon each day, and subsequently supplies this line to the aforementioned to assist them in the placing and acceptance of wagers based on the outcome of professional baseball games.
[522] I have established through independent investigation that this informant has had the opportunity to obtain first-hand knowledge of the activities the informant has described. This informant has been contacted by Special Agents of the Federal Bureau of Investigation on several occasions since January 1970 and on 22 occasions the informant has furnished information which has been determined to be accurate by independent investigation. On a date during the week beginning on August 9, 1970, this informant stated that within five (5) days prior to that

date, through personal conversation with one of the principals at the Sportsman's Club, the informant determined that Doolittle is currently operating as described in the preceding paragraph. This informant further stated that through first-hand knowledge the informant knows that Anderson and Baxter are engaged in accepting wagers on the outcome of professional baseball games as of a date during the week beginning on August 9, 1970.

\*   \*   \*   \*   \*   \*

6. Examination of the records of the Macon, Georgia, Credit Bureau on April 27, 1970, disclosed that Doolittle and William A. Sanders, Jr., are listed as owners of the Sportsman's Club, Macon, Georgia. Sanders was also listed as a former employee of the Southern Bell Telephone Company for 13 years.

\*   \*   \*   \*   \*   \*

/s/ GARY W. HART
    Special Agent
    Federal Bureau of
    Investigation
Subscribed and sworn before me this 21 day of August, 1970.
/s/ W. A. BOOTLE
    United States District Judge

3. The district court, in drawing the wiretap order, simply adopted the "others as yet unknown" language used by the government in its application.

"discoverability" test successfully advanced by Minnie Kahn in the Seventh Circuit, the government stated in its brief to this court:

> The application in the present case demonstrated that agents of the government actually "knew," that is had personal knowledge as opposed to information, of only one defendant who was using the phones in question: defendant Doolittle, the person named in the order. They and the Court had nothing more than "probable cause to believe" that Anderson and Baxter [and Sanders] would be intercepted.[4]

Or, I would add, that these three were "committing the offense" for which the wiretap was sought.

Thus, the majority manufactures for the government a result which reflects considerable profit from inconsistent positions, while purging the government's contention of any adverse consequences, however logical or proper they may be. Appellant Anderson argues that in this respect the government should now be estopped. There may be merit to Anderson's argument, inasmuch as the government was equally as capable as appellants to anticipate what the Supreme Court would hold in *Kahn.* I need not rest my views on estoppel, however, since I have already concluded that the requisite probable cause existed as to Anderson, Baxter, and Sanders at the time when tap authorization was sought. Under *Kahn,* therefore, I would reverse as to these three with directions to the district court to suppress their intercepted communications pursuant to 18 U.S.C. § 2518(10)(a)(ii) ("order of authorization or approval under which it was intercepted is insufficient on its face").[5]

Before BROWN, Chief Judge, and WISDOM, GEWIN, BELL, THORNBERRY, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, DYER, SIMPSON, MORGAN, CLARK, RONEY and GEE, Circuit Judges.

BY THE COURT:

A member of the Court in active service having requested a poll on the applications for rehearing en banc and a majority of the judges in active service having voted in favor of granting a rehearing en banc,

It is ordered that the cause shall be reheard by the Court en banc with oral argument on a date hereafter to be fixed. The Clerk will specify a briefing schedule for the filing of supplemental briefs.

---

4. Brief for the government at 28–29.

5. Although the majority does not make this argument in support of its conclusion that Title III was substantially complied with, one might contend that paragraph 4 of the wiretap application, which purports to incorporate the Hart affidavit by reference, operated in legal usage to name Anderson, Baxter, and Sanders insofar as § 2518(1)(b)(iv) required that they be named in the application. One might then argue that since neither the application, the supporting affidavit, nor the order in *Kahn* mentioned Minnie Kahn, and that since the Supreme Court phrased its holding disjunctively in terms of naming a person in the application *or* interception order, the Court implied thereby that the naming of probable cause suspects in *either* the application or the order would satisfy the statute. I may assume that the incorporation by reference operated to name Anderson, Baxter, and Sanders in the application, but I reject the idea that *Kahn* supports or implies the rest of the argument. First, the significant feature of *Kahn* is its emphasis on the literal language and terms of Title III. In addition to requiring, under *Kahn,* the naming of proba-

ble cause suspects in the application, Title III literally requires that they also be named in the order. § 2518(4)(a). That was not done in this case, and *Kahn*—inasmuch as it involved no question of half-compliance, through incorporation by reference or otherwise—cannot be deemed to support an analysis which runs counter to the statute's literal provisions. Second, although *Kahn* holds that the district court's duty to include names in the order is no broader than the government's duty to include them in the application, the Court explicitly recognized that "[s]ection 2518(4)(a) requires that the order specify 'the identity of the person, if known, whose communications are to be intercepted.'" 415 U.S. at 151, 94 S.Ct. at 982, 39 L.Ed.2d at 234. This part of the Court's discussion does strongly imply a responsibility on the government to see that the names of its probable cause suspects are placed in the court's order—the operative document for initiating a lawful wiretap—as well as the application. This responsibility arises because "the judge who prepares the order can only be expected to learn of the target individual's identity through reference to the original application . . . ." *Id.*