COLEMAN, Circuit Judge,
dissenting.
With all deference to the views of my Brethren, I cannot concur in the foregoing opinion.
The stipulated facts wholly failed to establish the conspiracy charged in the indictment.
Under the facts of this case, I find no congressional enactment or clear judicial precedent which would transmogrify a local theft and a local sale of the stolen goods into an interstate offense.
Consequently, I would reverse the convictions.
I

The Stipulated Facts do not Support the Conspiracy Charge

The trouble with this case is that the defendants were not prosecuted for a violation of the Dyer Act. They were prosecuted for a conspiracy. The essential elements of the two offenses are different; the requisite proof is not the same.
Conspiracies involve action to be taken in the future. One cannot conspire to do something which has already been done. By its very terms the indictment charged that these defendants conspired to commit a specific act. What was that act? It was to transport automobiles in interstate commerce, knowing them to have been stolen.
The stipulated facts are that the defendants had neither express nor implied knowledge that the local purchaser would later move the automobiles across state lines. The stipulation does not say that the subsequent interstate transportation by the purchaser occurred by or with the conspiratorial knowledge, intent, purpose, agreement, or participation of the appellants. These appellants stole the automobiles in Illinois and sold them in Illinois, clearly a local crime. Sometime later, maybe six months later, the local purchaser transported the vehicles across state lines. The astounding thing is that the stipulation does not say that the purchaser knew the automobiles were stolen when he bought them; it does not say that he knew the automobiles were stolen when he transported them. Hence, an indispensable element of a Dyer Act violation by the purchaser is totally lacking.
These appellants are entitled to the presumption of innocence and, most assuredly, may not be convicted unless the government establishes the essential allegations of its indictment. It inexorably follows that there has been a total lack of proof in this case and these convictions should not be allowed to stand.
The majority holds that these fatal deficiencies were cured, post hoc, ergo propter hoc, by proof that the automobiles crossed state lines, ordinarily nothing more than a jurisdictional fact in a completed Dyer Act violation. The trouble with this analysis is that the stipulated facts do not establish a Dyer Act violation by anybody. This being so, the application of what could have been a jurisdictional fact in an appropriate case simply cannot infuse life into a body where life had never existed.
This is more cogently so when we realize that what we have here is an effort to use a jurisdictional fact applicable to one type of case (interstate transportation of a stolen vehicle, known to be stolen) to serve as proof of an entirely different but indispensable, element of a conspiracy case (knowledge of a conspiracy, agreement to participate in it, and some act in furtherance of it).
As I commented from the Bench at oral argument, the government simply stipulated itself out of Court and, up to and through oral argument, refuses to see it.
Without further ado, I might stop here. But there is more which ought to be said. *1319 The government had to show that a conspiracy existed, that the defendants knew of the conspiracy, and that knowing of it they agreed to it and participated in it, see, e. g., United States v. Dyar, 5 Cir., 1978, 574 F.2d 1385.
As the record shows, on a Rule 20 transfer, these defendants attempted to plead guilty before Judge John F. Grady in the Northern District of Illinois. At the plea hearing, the Judge refused to accept the plea. He stated,
Well, I am sure that for a conspiracy to violate this statute, the element of the knowledge of the interstate transportation is required. At least the defendant would have to be on notice of facts from which that transportation would be readily inferable. That is the very least. (Emphasis added).
I think Judge Grady was right.
He remanded the case to the Middle District of Georgia, where the indictment had been returned.
When the case got back to Georgia the government and the defendants entered into the stated stipulation. Then the United States Attorney took the following position:
Your Honor, of course the Government is taking the position that the stipulated facts show that both defendants participated in a conspiracy. (Emphasis mine).
In all due respect, this is incredible. The stipulation neither mentions nor describes a conspiracy with anybody — quite to the contrary, the stipulation specifies that defendants had no knowledge, actual or implied, that the vehicles would ever leave the State of Illinois. If they had no such knowledge how, beyond a reasonable doubt, could they have agreed to, or participated in, the transportation interstate?
II

This Conviction is Not Supported by Congressional Enactment or Judicial Precedent

A.
The majority says that although the vehicles were stolen and sold in Illinois, a completed state offense, and although the defendants had no joint purpose, agreement, knowledge, or connection as to the subsequent occurrences, they were nevertheless guilty of a conspiracy to violate the Dyer Act where, sometime within the ensuing six months, the vehicles were transported by others in interstate commerce without a showing that the transporters knew the vehicles were stolen.
The majority begins its analysis by saying that in Dyer Act prosecutions “[KJnow-ledge that the property . . . will move in interstate commerce is not an element of the offense”, citing three cases.
Let us look at the cases cited by the majority. In Overton v. United States, 5 Cir. 1968, 405 F.2d 168, the automobile had already been transported in interstate commerce. Overton was convicted of receiving it, knowing it to have been stolen, 18 U.S.C. § 2312. “Will move” was not in the case.
In Bibbins v. United States, 9 Cir. 1968, 400 F.2d 544, the defendant himself had driven the automobile across a state line, although he did not know he had actually crossed it.
United States v. Doolittle, 5 Cir. 1975, 507 F.2d 1368, affirmed en banc, 518 F.2d 500, was really concerned with the validity of a wire tap in a prosecution for conspiracy to use interstate wire and telephone facilities to carry on illegal gambling operations. Interstate activity was inherent in the agreement.
Finally, the Dyer Act, 18 U.S.C. § 2312, says, “whoever transports”. The vehicle must first be stolen, as here, and, with knowledge of that fact, the vehicle must thereafter be transported.
I must disagree with this “will move" theory.
If the vehicle is stolen, if the defendant knows it, and the vehicle “will move”, then, depending on the specific circumstances, the applicable statute would be 18 U.S.C. § 2:
(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
*1320 (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.
The record reflects, of course, that this prosecution was in no way grounded on 18 U.S.C. § 2, as indeed it could not have been because the stipulated facts would not have supported it.
B.
I think the Ninth Circuit correctly decided the issue now before us in United States v. Berlin, 9 Cir. 1973, 472 F.2d 13, a prosecution involving the Dyer Act but brought under 18 U.S.C. § 2(b). The Court pointed out that the Dyer Act deals with stolen tangible personal property, not the use of the mails in the ordinary course of business, or stolen securities, or forged travelers checks, or the like. I quote:
The United States contends for a rule that sale of a car (known by the seller to be stolen), followed by interstate transportation by an innocent purchaser constitutes a violation of the Dyer Act by the seller where the interstate transportation is reasonably foreseeable. (Emphasis added).
We agree with appellants that this rule is too broad. Since interstate automobile transportation is now commonplace, this construction would seem to render every sale of a stolen car a federal offense. Section 2(b) does, as appellants contend, have overtones of agency, and, in our judgment, the willful causation to which it refers must be purposeful (emphasis added) rather than be based simply upon reasonable foreseeability.
* * * * * *
Such is not the case in the ordinary sale of tangible stolen property. In the ascertainment of purpose and intent our focus is not on a course of commercial operations which the very fact of sale dictates will regularly occur. Rather, it is on the interstate transportation itself. (Omitting the immediately preceding language).
472 F.2d at 14, 15.
C.
The Court says that its views are consistent with United States v. Muncy, 5 Cir. 1976, 526 F.2d 1261. I disagree. I sat on that case and concurred in the opinion, which, as the instruction there attacked clearly reflects, held only that for jurisdictional purposes the government had to prove that the beef moved in interstate commerce, that (to quote the instruction) the government did not have to prove that “prior to or after the alleged receipt of such meat, [the defendants] had knowledge of the fact that the meat had been transported (emphasis mine) in interstate commerce . . . .” 526 F.2d at 1264, n.l.
The case does not stand for the proposition that once a defendant completes a local theft he may thereafter, in the absence of the requisite purpose or knowledge, be prosecuted for conspiracy if perchance (unknown to him) others put the stolen goods in interstate commerce.
United States v. Kelly, 5 Cir. 1978, 569 F.2d 928, is similarly inapposite. There, the defendant was charged with causing and conspiring to cause a person to travel in interstate commerce in execution of a scheme to defraud; in other words, Kelly had acted with knowledge of future events. That element was completely stipulated out of this case. Of course, the defendants here knew that the buyer would sell the cars, or parts from them, but that is not enough. As the Ninth Circuit observed in United States v. Berlin, supra, the prosecution must be based on a purposeful act. It cannot stand on “reasonable foreseeability”.
Ill

United States v. Feola, 420 U.S. 671, 95 S.Ct. 1255, 43 L.Ed.2d 541

The teachings of United States v. Feola, 420 U.S. 671, 95 S.Ct. 1255, 43 L.Ed.2d 541, are, in my opinion, irrelevant to the disposition of this case. I have already pointed out that the stipulation of facts now before us described no federal offense from which a jurisdictional fact could be lifted to serve as a crutch for these convictions.
*1321 This case is distinguishable from Feola in other respects.
First, the existence of the conspiracy at a time prior to the commission of the substantive offense was well established. It was unsuccessfully argued only that lack of knowledge that the assaulted individual was a federal officer provided a defense to the charge brought in the indictment.
Second, I can find nothing in Feola which says that a person may be found guilty of a conspiracy although he did not know of its existence, or did not agree to participate in it, or had no joint purpose of furthering it.
Third, the jurisdictional fact in Feola was a matter of status, not a matter of action. The person assaulted was a federal officer. What the defendants did or did not do could not have changed that. They did not have to do anything to confer jurisdiction. Like Mount Everest, it was there — and had been all the time.
The Dyer Act is a different matter. Before jurisdiction attaches there must be action, i. e., someone must transport the vehicle across a state line.
In Feola the defendants did not have to know that their intended victim was a federal officer if they intended, in any event, to assault him. In Dyer Act cases by command of the statute, knowledge is an indispensable ingredient. One may transport a stolen automobile across a state line a thousand times, which is enough to confer ordinary interstate jurisdiction, and yet not violate the criminal statute unless he knows that the vehicle was stolen. In Dyer Act cases there must be more than status; there must be knowing action, 18 U.S.C. § 2112. The defendant must, in an illegal manner, knowingly be connected with it; he must have knowingly conspired to have it done, or knowingly caused it to be done, or knowingly aided and abetted it, or knowingly done it himself. So, both under the terms of the statute and under the stipulated facts in this case, it is my view that interstate transportation is something more than jurisdictional in a Dyer Act case. It is an element of the crime itself.
Of course, under 18 U.S.C. § 2113, dealing with ■ receipt, concealment, etc., after the fact, interstate transportation is merely jurisdictional if the defendant knew of the stolen character of the vehicle. But § 2113 does not fit the facts in our case.
IV
On what should be sound federal judicial policy I must also disagree with this decision. If there is anything the federal courts do not need it is more jurisdiction and more cases. These confessed local car thieves were clearly guilty of a completed local crime. There is no reason why Illinois could not have promptly made them involuntary residents at Joliet. What we have here, in my judgment, is an unprecedented expansion of federal criminal jurisdiction. Henceforth, in the Fifth Circuit, the completed state crime of automobile theft can automatically ripen into a matter of federal criminal prosecution if the vehicles subsequently move, in the hands of others, in interstate commerce, even though the local thief had not joined in any agreement or purpose that such should take place and even though there is no showing that the transporter knew of the stolen character of the vehicles.

Conclusion

Although the Dyer Act has been on the books for sixty years, I have searched in vain for any case in the federal jurisprudence which, under similar facts, holds what the Court has held in this case.
I must respectfully dissent.